BENJAMIN BROWN and JACOB C. BROWN, Copartners Doing Business under the Firm Name and Style of B. BROWN & BRO., Appellants, Respondents, *v.* RARITAN CHEMICAL WORKS, INC., Respondent, Appellant.

First Department, July 3, 1919.

**Sale — when purchaser not entitled to inspection before payment — contract providing for giving of shipping instructions by buyer within specified time — breach of contract by failure to give instructions — evidence — telephonic communications.**

Where the terms of sale of goods under a written contract were " net cash against delivery order " the purchaser has no right to an inspection of the goods before payment.

A purchaser by agreeing to pay cash on production of the delivery order effectually waives any right to examine the goods and thus by his agreement places himself outside of the provisions of section 128 of the Personal Property Law and cannot avail himself of the right to inspect created by said section.

Where in an action by a purchaser under such a contract to recover for a breach thereof by the defendant in failing to deliver, it appears that the defendant voluntarily offered the privilege of inspection but without consideration and it was neither pleaded nor claimed that any new contract between the parties was created thereby, a telephonic conversation with an officer of the defendant who signed the privilege of inspection was immaterial, and the exclusion of testimony relating thereto was proper.

Where a contract for the sale of goods provided for the payment of a certain price " ex-dock New York; " that shipping instructions were to be given by the buyer not later than the twentieth of the month next preceding the month of shipment; that two cars were to be shipped monthly from the works from January to December, and that said shipments were to be made in monthly quantities to whatever point of destination the buyer fixed, the seller was not bound to tender the goods at any particular point,

but had the right to await shipping instructions, and if they were not received then to treat the failure to give them as a breach by the seller.
Where a failure to deliver under the aforesaid contract was alleged as a counterclaim in an action on another contract between the parties, *held,* that testimony as to telephonic communications had by defendant's vice-president with a member of the plaintiff's firm relating to the giving of shipping instructions were properly excluded.

CLARKE, P. J., dissented in part.

CROSS-APPEALS by the plaintiffs, Benjamin Brown and another, and by the defendant, Raritan Chemical Works, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 29th day of June, 1918, upon a dismissal of the complaint, and of the defendant's counterclaims at the close of plaintiffs' case.

The plaintiffs appeal from so much of said judgment as dismisses the complaint, and the defendant from so much thereof as dismisses the counterclaims.

*David R. Bernstein,* for the plaintiffs.

*James A. Hughes* of counsel [*Young & Hughes,* attorneys], for the defendant.

DOWLING, J.:

This action was brought to recover the sum of $2,352 damages claimed to have been sustained by reason of defendant's breach of a contract to deliver certain crystal chlorate of potash. Defendant counterclaimed in the sum of $540 damages claimed for the breach of a contract to deliver certain soda ash. The complaint and counterclaim were dismissed, and both plaintiffs and defendant have appealed.

Considering plaintiffs' appeal first, the complaint sets forth that on November 29, 1916, an agreement was made between them and defendant by which the latter was to sell and deliver to the former 300 kegs of crystal chlorate of potash at sixty cents per pound, immediate delivery, terms net cash, which agreement defendant has failed and refused to perform despite plaintiffs' demand that it do so, plaintiffs being ready, willing and able to perform all their obligations thereunder. By its answer the defendant set up: " V. That

First Department, July, 1919.          [Vol. 188.

on or about the 29th day of November, 1916, plaintiff and defendant made and entered into an agreement, the terms of which are set forth in the following broker's note or memorandum:

" PYE & Co.

" ' Brokers.

" ' Chemicals, Drugs, Etc.,

" ' 95 William Street.

" ' NEW YORK, *Nov.* 29*th*, 1916.

" ' Confirmation.

" ' Bought of          Raritan Chemical Works,

" ' For account of B. Brown & Bro.

" ' Quantity          300 Kegs

" ' Article          Chlorate of Potash Crystals (Domestic)

" ' Price          60c per lb.

" ' Terms          Net cash against delivery order.

" ' Shipment          Spot

" ' Remarks

" ' Yours truly,

" ' PYE & CO.

" ' Per J. V. C.'

" VI. That on or about December 1st, 1916, in accordance with the terms of said agreement, defendant duly presented to the plaintiff delivery order covering said three hundred (300) kegs of Chlorate of Potash Crystals and demanded payment for said Crystals; that plaintiff refused to accept said delivery order or the said goods, or to make payment therefor, unless an inspection of the said Chlorate of Potash Crystals, then in a warehouse in the City of Jersey City, was permitted by defendant for the purpose of ascertaining the make of such Crystals; that thereupon the defendant issued and delivered to plaintiff, in accordance with its request, a permit allowing the plaintiff to make inspection of said Crystals within a reasonable time, and that the plaintiff accepted said permit and agreed to make inspection and after such inspection was made, to accept and pay for said Crystals, provided they were of the make and brand contracted for. That at the time of issuing said permit for the inspection of said goods, it was understood and agreed between plaintiff and the defendant

that if such inspection was not made within a reasonable time, that the said contract would be considered by defendant breached and cancelled; that the plaintiff has failed and refused to make inspection of said goods and failed and refused to accept same or to pay therefor; that thereby the said contract was breached by plaintiff, and that same was cancelled by defendant."

Upon the trial the contract for the purchase of these goods under the written memorandum made by the brokers as above set forth was proven by plaintiffs. Under that memorandum the terms were " net cash against delivery order." On December 1, 1916, at about two o'clock in the afternoon, plaintiffs received an invoice for 300 kegs crystal chlorate of potash at the agreed price, accompanied by the following letter:

> " FRANK J. CASSIDY, President
> ". WILLARD E. DAY, Vice President
> " RARITAN CHEMICAL WORKS
> " 229 West 42d Street — New York
> " *Dec. 1st,* 1916.

" B. BROWN & BRO.,
      " N. Y. City:

" DEAR SIRS.— In accordance with contract of November 29th, placed with us through Pye & Company, we enclose delivery order and bill for 300 kegs Chlorate of Potash, Crys. (Domestic), at 60c per pound, terms net cash against delivery order.

" Please hand bearer check in payment of this bill, $20160.00, and oblige,            Yours very truly,

> " RARITAN CHEMICAL WORKS,

" WED /DLB.            W. E. DAY, *V. Pres.*"

In reply thereto plaintiffs wrote a letter and delivered it to the defendant's messenger, still in waiting, as follows:

> " *Dec. 1st,* 1916.

" RARITAN CHEMICAL WORKS,
      " 229 W. 42nd Street,
            " New York City:

" GENTLEMEN.— We beg to acknowledge receipt of your invoice No. B1048 for three hundred (300) kegs Crystal

domestic Chlorate of Potash which we purchased from you through Messrs. Pye & Co. at 60c per pound.

" Kindly let us have inspection permit on the Jarvis Warehouse as we wish to find out the make of these goods.

" Kindly do this at once to enable us to give you a check for same.                    Yours very truly,

" B. BROWN & BRO.

" By B. BROWN."

Defendant thereupon sent the following letter to plaintiffs by messenger, which they received at three-thirty P. M.:

" FRANK J. CASSIDY, President
" WILLARD E. DAY, Vice President
" Telephone Bryant 8420–1–2
" RARITAN CHEMICAL WORKS
" 229 West 42nd Street, Cable Address
" New York                ' Antimang '
" Codes                Western Union
" A. B. C. 5th
" Edition Lieber's
" And A1
" *December 1st*, 1916.

" B. BROWN & BROTHER,
" 237 Water St.,
" City: .

" DEAR SIRS.— Replying to yours of the 1st inst., and referring to our invoice B-1048, for three hundred kegs of Crystal Domestic Chlorate of Potash, we enclose inspection permit on Jarvis Warehouses for these goods.

" It is now two-thirty P. M. We will hold the goods until five P. M., this afternoon when if we do not receive your certified check for the amount of our bill, $20160.00 we will consider that you have broken the contract and we will not be held by same.                    Very truly yours,

" RARITAN CHEMICAL WORKS,

" WED /SF.                    W. E. DAY, *V. Pres.*"

This was accompanied by the inspection permit referred to therein as follows:

" FRANK J. CASSIDY, President
" WILLARD E. DAY, Vice-President
" RARITAN CHEMICAL WORKS,
" 229 West 42d Street, New York
" *Dec. 1st*, 1916.

" JARVIS WAREHOUSE,
" 13th & Provost Sts., Jersey City, N. J.:

" DEAR SIRS.— Referring to the lot of 500 kegs Crystal Chlorate of Potash, Domestic, delivery order which we mailed you on Wednesday evening, please allow B. Brown & Bro., or their representative to examine these goods as these parties wish to satisfy themselves that the goods are a Domestic Brand.        Yours very truly,
" RARITAN CHEMICAL WORKS,
" W. E. DAY, *V. Pres.*"

Plaintiffs then wrote the following letter, which they appear to have mailed, having no one available by whom to deliver it:

" *Dec. 1st*, 1916.
" RARITAN CHEMICAL WORKS,
" 229 W. 42nd St.,
" New York City:

" GENTLEMEN.— Your examination permit at hand at 3:30 P. M.

" Our man who attends to the inspection of material is out just now. We will try our best to have same examined this afternoon, if not, will have same done tomorrow.

" You must allow us more reasonable time than about an hour to go to Jersey City, have the goods inspected, reported here and a check sent to your office.
" Yours truly,
" B. BROWN & BRO.,
" By J. C. BROWN."

Plaintiffs endeavored to introduce testimony as to a conversation had over the telephone with W. E. Day, vice-president of defendant, but were prevented from so doing and excepted to the refusal to receive the proposed evidence. The goods contracted for were neither inspected by plaintiffs nor delivered by defendant and the question presented is

whether plaintiffs had the right, under their contract, to an inspection of the goods before being required to pay for the same. If they had a right to such an inspection, I am of the opinion that, upon the undisputed facts disclosed by the record, the question of whether the opportunity for inspection offered them by defendant was a reasonable one, would have been an issue of fact for the jury. But I do not believe plaintiffs, under their contract, had any right to an inspection. The terms of sale were net cash against delivery order, and these terms, it seems to me, conclusively negative any idea that an inspection was to be allowed them. On the contrary, by agreeing to pay cash on production of the delivery order, they effectually waived any right to examine the goods themselves and thus, by their agreement, put themselves outside of the provisions of section 128 of the Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], as added by Laws of 1911, chap. 571) and could not avail themselves of the right to inspect created thereunder, where the parties had not " otherwise agreed," as in this case they did. The act of the defendant in offering plaintiffs a privilege of inspection was a purely voluntary one, without consideration, and it was not pleaded or claimed that any new contract between the parties was created thereby. This being so, the telephonic conversation sought to be proved was quite immaterial and no prejudicial error was committed in excluding it. I think the dismissal of the complaint was correct and should be affirmed.

Considering next the defendant's appeal for the dismissal of the first counterclaim for $540, I am of the opinion that this part of the judgment should also be affirmed. Defendant by supplemental answer set up a counterclaim of $10,000, but from the dismissal of this no appeal has been taken. Both are based on the following contracts. A written contract was made between the parties for the sale of twenty-four carloads of soda ash at two and one-eighth cents per pound ex-dock New York, net cash against documents, to be bought by plaintiffs for defendant. The provision as to deliveries was as follows, the italicized portion being typewritten, the remaining part being a printed form:

" DELIVERIES. Shipping instructions to be given by the buyer not later than 20th of the month next preceding the

month of shipment.  *Two (2) cars monthly over year 1917.
Shipments from Works from January to December inclusive.*"
It was also provided:

" 2.  Each month's shipments to be treated as separate and
independent contract, but if buyer fails to fulfill terms of order,
purchase or payment under this or other contracts, seller may
defer further shipments until such default is made good or may
at its option cancel the contract."

None of the soda ash was ever delivered under this contract,
as no shipping instructions were ever given by the buyer
(the defendant) as required by the contract.  The printed and
typewritten parts of the contract are not inconsistent.  The
general provision is that shipping instructions were to be
given by the buyer not later than the twentieth of the month
next preceding the month of shipment.  The special pro-
vision was for two cars to be shipped monthly from the works,
from January to December; and these shipments were still to
be made, in those monthly quantities, to whatever point of
destination the buyer fixed.  Under these conditions, I do
not think the sellers were bound to tender the goods at any
particular point to defendant, but they had the right to
await the shipping instructions, and if they were not received,
then to treat the failure to give them as a breach by defendant.
This was not a case where the goods were to be delivered
" f. o. b." at the city of New York, or at any particular place.
They were to be shipped from plaintiffs' works to such place
as defendant might name.  The clause " ex-dock New York "
merely fixed the price as being at that point, in order to
determine the responsibility for freight charges.  I am of
opinion, therefore, that defendant breached its contract by
failing to give shipping instructions as provided thereby
and that its counterclaim for $540, being the loss claimed to
have been sustained by reason of the failure to deliver two
carloads of soda ash in January, 1917, was properly dismissed.

It is claimed that there was error in excluding testimony
sought to be elicited as to telephonic communications had by
defendant's vice-president with a member of the plaintiffs'
firm, but the ruling was correct as no proper foundation had
been laid for such a question and the vice-president testified
he had never spoken to them personally.  Furthermore,

there was no indication of the relevancy of the conversation with Jacob Brown, claimed to have been had in December, 1916; the question did not limit the evidence sought to be elicited to matters affecting the contract in question, or to deliveries thereunder; and in any event, if it was intended to show the giving of shipping instructions, the testimony could not be admissible unless the conversation took place on or before December twentieth, that being the latest date when shipping instructions for January could be given.

The judgment should be affirmed upon both appeals, without costs to either party.

LAUGHLIN, PAGE and MERRELL, JJ., concurred; CLARKE, P. J., dissented.

CLARKE, P. J. (dissenting):

I dissent as to the dismissal of the complaint.

Judgment affirmed, without costs to either party.