MAX KAPLAN and Others, Doing Business under the Firm Name and Style of KAPLAN BROS., Respondents, *v.* IRVING KRAUSS and Another, Copartners, Doing Business under the Firm Name and Style of KRAUSS & LEVY, Appellants. (Action No. 1.)

MAX KAPLAN and Others, etc., Respondents, *v.* IRVING KRAUSS and Another, etc., Defendants, Appellants. (Action No. 2.)

Supreme Court, First Department, Appellate Term, April 5, 1934.

*Krieger, Stutsky & Friedman* [*Leo Guzik* and *Myron Krieger* of counsel], for the appellants.

*Weisman, Quinn, Allen & Spett* [*Murray C. Spett* and *Mortimer Ratner* of counsel], for the respondents.

FRANKENTHALER, J. These two actions are by sellers against buyers to recover damages for non-acceptance.

By the order dated August 20, 1931, which is the subject of action No. 1, plaintiffs agreed to ship to defendants in December, 1931, and January and February, 1932, 2,000 dozen of split pandans at specified prices, " terms, nett. 60 trade accep. on delivery." Under the contract dated January 9, 1932, upon which is based action No. 2, plaintiffs agreed to deliver 2,000 dozen of Toyo panamas at certain prices, " shipment from Kobe February complete; terms, nett. 60 days trade acceptance."

Four cases of pandans (referred to on the trial as peanits) were delivered to defendants about the end of December, 1931, and paid for by trade acceptance. According to the plaintiffs' testimony the balance called for by that order was not taken by defendants because they said they had no room for them, and plaintiffs accordingly stored them in a warehouse and gave defendants the receipt. Defendants claimed, on the other hand, that upon examination of the peanits which were delivered they found they were not satisfactory because the tops were square or flat, not round as agreed upon (although the order is silent in that regard); that for that reason defendants told plaintiffs' representative they could not use the peanits, and as a result of the dispute it was agreed that if defendants would pay for the four cases delivered, the contract as to the undelivered peanits would be called off. Plaintiffs denied the making of any such agreement.

As to the panamas, the subject of action No. 2, plaintiffs' testimony was that after they were imported here from Japan they notified defendants of their arrival, and defendants said they had no room for them; that plaintiffs should hold them until defendants were ready for them; that plaintiffs put them in a bonded warehouse and were still waiting for defendants to be ready for them.

March 12, 1932, plaintiffs wrote defendants inclosing bill for the panamas, stating that the goods were in the warehouse at defendants' risk subject to their order, asking them to take delivery of the peanits already invoiced, and inclosing trade acceptances under both contracts for signature. There was no written reply to this letter; indeed defendants at no time made any written complaint with respect to the goods. Defendants denied that they refused to receive the panamas because they had no room, and the

defendant Levy testified that when plaintiffs' letter was received he telephoned plaintiffs' representative Hampson, " well, if that is the case and you send me a trade acceptance for the Toyos "— the panamas — " I want to see the case of goods or tell me where the goods are or what warehouse they are at. He said ' nothing doing, I won't show you or tell you where they are. You just sign the three trade acceptances and then I will give you the goods.' I said that if that is the case then there is a trick in it and I won't sign them." The proposed acceptances were returned to the plaintiffs.

That Levy demanded inspection of the panamas and that Hampson refused was not denied. No tender of the panamas or of warehouse receipts therefor was made; and the evidence warrants a finding that there was a material drop in the price of the goods.

The jury agreed upon a verdict for the plaintiffs in both actions, but the amount of the recovery was not fixed by them in the first instance. Before the jury retired, as directed, to find the amount of damages in each case, there was the following colloquy: " The Foreman: I just want to know if we have to stipulate a fixed sum? The Court: Yes, in each case. Defendants' Attorney: Then, will your Honor charge the jury on the question of damage? Plaintiffs' Attorney: Your Honor has referred to that in your charge. The Court: Yes, and also to the expert testimony in reference to the market price of those articles. Defendants' Attorney: I except. Will your Honor charge, then the basis on which the jury may determine in their mind what the damage is? The Court: That is just the purpose of having the jury retire."

After further deliberation the jury rendered a verdict for the amounts demanded in the complaints — $2,760 in the first action, and $1,960 in the second action.

It was the duty of the trial judge to charge the jury on the rule of damage applicable to these cases. Contrary to respondents' impression, he gave no instruction whatever covering that matter; and his error in that regard seems prejudicial to defendants.

As to action No. 1, however, in which no other prejudicial error is shown, I do not think the ruling requires reversal of the judgment in that action, for the verdict rendered in the first instance for the plaintiffs, without fixing the damages, is amply sustained by the evidence, and the right of recovery is separable from the damages.

In appeals from the Municipal Court there is no doubt as to the power of the court — either the lower court or the appellate court — in a similar situation, for subdivision 5 of section 129 of the Municipal Court Code provides that " a new trial may be limited to the questions with respect to which the verdict or judgment is

found to be wrong, if such questions are separable. If a verdict or judgment is set aside solely because the damages are excessive or inadequate, it may stand in all other respects and the new trial may be limited to the question of damages." I think, however, that section 584 of the Civil Practice Act, as amended in 1926 (and incorporated in that year in the Constitution as section 8 of article VI thereof), is broad enough to warrant a modification rather than a reversal of the judgment. That section provides that " Upon an appeal from a judgment or an order, any appellate court to which the appeal is taken, which is authorized to review such judgment or order, may reverse or affirm, wholly or in part, or may modify, the judgment or order appealed from, and each interlocutory judgment or intermediate or other order which it is authorized to review, and as to any or all of the parties. It shall thereupon render judgment of affirmance, judgment of reversal and final judgment upon the right of any or all of the parties, or judgment of modification thereon, according to law, except where it may be necessary or proper to grant a new trial or hearing, when it may grant a new trial or hearing."

Provisions so sweeping and comprehensive were evidently devised to eliminate trial and appellate court battledore; and in this first action to recover damages for breach of contract there seems no obstacle to the affirmance of plaintiff's right to recover and the ordering of a new trial to assess the damages.

With respect, however, to action No. 2 — the suit on the panamas contract — there is an additional assignment of error based on the rulings on the following requests to charge: " Defendants' Attorney: I ask your Honor to charge the jury that according to the law and the statutes of this state, the statutes clearly accord to the buyer the right to examine the merchandise before accepting delivery. The Court: The court declines to charge as requested, under the facts disclosed in this case. Defendants' Attorney: I respectfully except. Defendants' Attorney: I ask your Honor to charge the jury that, unless the evidence shows it was otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, upon request, to afford the buyer a reasonable opportunity of examining the goods, for the purpose of ascertaining whether they are in conformity with the agreement. The Court: The court declines to charge as requested, in a sale by sample."

By subdivision 2 of section 128 of the Personal Property Law, " unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract." Subdivision

1 provides that the buyer is not deemed to have accepted goods after delivery, unless and until he has had a reasonable opportunity to examine the goods, and by subdivision 3 it is enacted that where goods are delivered to a carrier by the seller, in accordance with an order from or agreement with the buyer that the goods shall not be delivered until payment of the price, in the absence of agreement permitting examination, the buyer is not entitled to examine the goods.

The above section was construed in *Glass & Co.* v. *Misroch* (239 N. Y. 475) and the court approved the statement in Williston Sales (§ 472) that " ' the buyer is entitled to examine the goods to decide whether he will become the owner, and until the examination is completed or waived, he is under no obligation to accept the goods.' " (See *Beals* v. *Hirsch*, 214 App. Div. 86; affd., 242 N. Y. 529.)

In support of the refusal to charge respondents cite *Brown* v. *Raritan Chemical Works, Inc.* (188 App. Div. 578) and *Hyman* v. *Hullman* (205 id. 119), contending that where payment is to be made simultaneously with delivery no examination is permitted. In the *Brown* case, however, the plaintiffs had agreed to pay " net cash against delivery order," and in the *Hullman* case payment was to be made by the buyers on bill of lading, thus apparently bringing these cases within the rule (2 Williston Sales [2d ed.], § 479) that " any agreement the performance of which, according to its terms is or may be inconsistent with inspection before payment of the price, will prevent the existence of the condition. A common illustration of such an agreement is a contract which provides for payment of the price on receiving documents of title. Such an agreement generally indicates the expectation of the parties that the goods will be in the hands of a bailee at the time the price becomes payable. * * * Another illustration of a bargain inconsistent with examination of the goods before payment is a contract by which goods are to be sent to the buyer C. O. D. It is the practice of the express companies not to permit examination before payment on such shipments. The contract must be assumed to have been made with this practice in mind. Accordingly there is no right of inspection."

A case in point is *Imperial Products Co.* v. *Capitol Chemical Co.* (187 App. Div. 599). That action was to recover damages for breach of contract of sale entered into between the parties pursuant to which the defendant agreed to deliver to the plaintiff one car of standard white napthalene flakes in barrels or paper lined boxes at eight cents per pound f. o. b. West Elizabeth, N. J., prompt shipment from defendant's plant at Birmingham, Ala. The complaint alleged that plaintiff was ready, willing and able to pay for the goods, but defendant refused to deliver the same. At the trial it was shown

that plaintiff tendered a certified check in payment for the goods, but demanded the right to inspect the same before payment. Defendant insisted on its right to receive the check in exchange for a bill of lading without inspection.

The court said (p. 600) that subdivision 3 of section 128 " does not apply to every shipment by a carrier, but only to such shipments when the terms of the contract of sale provide that the carrier shall collect on delivery. The controlling element is the agreement of the parties, and not the method of shipment by the seller. In this case there was no agreement that the shipment should be made ' collect on delivery,' nor was there any agreement that the buyer would pay the purchase price by sight draft to be attached to the bill of lading. No terms of payment were specified in the agreement between the parties. Under such a contract, delivery and payment are concurrent obligations. (Pers. Prop. Law, § 123, as added by Laws of 1911, chap. 571.) This is very different from payment of the purchase price by sight draft with bill of lading attached. In the first, the buyer has the right of inspection to ascertain whether the goods are in conformity with the contract, when the seller tenders delivery, before he is required to accept and pay for the goods. In the latter, payment is a condition precedent to delivery and hence inconsistent with the right of inspection. (*Plumb* v. *Hallauer & Sons Co.*, 145 App. Div. 20; Pers. Prop. Law, § 128, subd. 2, as added by Laws of 1911, chap. 571.) Inasmuch as there was no provision in the agreement between the parties inconsistent with the right of inspection before acceptance and payment, the seller could not deprive the buyer of that right by adopting a method of collection not provided in the agreement. (Williston Sales, 840.) "

The judgment of the Appellate Division was affirmed (228 N. Y. 528).

In the present case the facts are more favorable to the buyers, plaintiffs suing on an executory contract for the sale of goods for which trade acceptances were to be given on delivery, and there being no intervening carrier. That the sale was by sample did not defeat the right to inspection. (1 Williston Sales [2d ed.], § 256.)

Judgment in action No. 1 modified by striking therefrom the amount and items of plaintiffs' recovery against the defendants and by directing an assessment of plaintiffs' damages by the court and jury, and as modified affirmed.

Judgment in action No. 2 reversed and a new trial ordered, with costs to appellants to abide the event.

Appeal from order dismissed.

All concur; present, HAMMER, CALLAHAN and FRANKENTHALER, JJ.