Gehl and another vs. Milwaukee Produce Co.

GEHL and another, Respondents, vs. MILWAUKEE PRODUCE
COMPANY, Appellant.

*January 13 — February 2, 1900.*

*Sales: Performance: Delivery: Tender: Special verdict: Inconclusive
questions: Custom: Measure of damages: Instructions to jury.*

1. Plaintiffs sold defendant clover seed, to be delivered upon the buyer's
request at any time prior to March 1, and, in any event, to be
delivered and to be received by the buyer on March 1. No place of
delivery was mentioned. Postponements were agreed to by both
parties. On March 14, defendant demanded performance by de-
livery at its store; plaintiffs denied duty to deliver at that place,
and insisted on defendant's duty to accept the seed at the ware-
house. Plaintiffs held the matter under consideration until the
next day and then attempted a coercive and final tender in accord-
ance with their contention as to the rights of the parties, which
was refused. Plaintiffs then sold the seed at a loss. *Held,* that
the interview on March 14 constituted a final offer of perform-
ance by each, according to his theory of the terms of the contract
as to the place of delivery, and a categorical refusal by the other.

2. In such case the true issue being whether the defendant had refused
to accept an offer by plaintiffs to deliver in accordance with the
contract, a finding of the special verdict that on March 1 plaint-
iffs notified defendant of their willingness to perform the contract
and that the subsequent postponements were had at the instance
of defendant is *held* inconclusive.

3. Where a contract for the delivery of clover seed is silent as to the
place of delivery, in the light of evidence of a uniform custom in
that respect among seed dealers, and of plaintiffs' knowledge or
ignorance thereof, the refusal to submit to the jury the question
of the existence of such custom is *held* to have been justified only
on the ground that such custom was established beyond dispute.

4. Where a custom as to place of delivery is shown to be uniform in
the locality where it is recognized, unless it is shown that both
parties to a contract, silent on that point, intended to exclude it,
or that one party was ignorant thereof to the knowledge of the
other, it should control as to the manner and place of delivery.

5. Where plaintiffs, after defendant's refusal to accept delivery of the
clover seed, sold the same at a loss, in submitting a question of a
special verdict as to whether due diligence was used in selling the
seed, it was the duty of the court to instruct the jury as to the

standard of due diligence and to inform them that the unreasonable rejection of higher offers, or neglect to avail themselves of an existing market price, was not consistent with such standard.

6. In an action for damages for refusal to complete a contract for the sale of clover seed, when plaintiff thereafter sold the same at a loss, it is error to instruct the jury that the measure of damages is the difference between what the seed was sold for and the contract price.

7. Where plaintiffs testified they paid no commission and incurred no expense in making such sale, commission for their own service is not an element of damage.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

February 1, 1897, the plaintiffs made a verbal agreement for sale to the defendant of certain clover seed, which the following day was confirmed by the defendant by the following:

"Milwaukee, Feb. 2, 1897.

M. & N. GEHL — Dear Sirs: Confirm purchase about 160 Bgs. white clover, 8¾; 9 Bgs., 6c.; 9 Bgs., 5c.; 25 Bgs. red, 7¼; screen, 2c.; buyer's option, March 1.

"Truly yours,

"MILWAUKEE PRODUCE Co.

"Would like to get set large samples of white. Kindly send us key, and obl."

"Buyer's option, March 1," meant that the plaintiffs should deliver at any time prior to March 1 upon the defendant's request, and, in any event, should deliver, and the buyer should receive, on March 1. During the month of February the plaintiffs requested and the defendant accepted performance as to all except the 160 bags of white clover seed, and the same without question was delivered by the plaintiffs at the defendant's store in Milwaukee, and there weighed on the defendant's scales, and paid for by the latter. The plaintiffs claim and the defendant denies that on March 1 the plaintiffs, either by telephone or in a conversation, expressed readiness to deliver, and asked defendant if it was

ready to receive the remainder, and that it requested a post-
ponement of a few days, which was accepted, and that de-
fendant made repeated further requests for postponement.
Defendant's narrative is that there was no such conversation
on the 1st, but admits that at one time within the following
week the plaintiffs said they would be ready the following
day to send over the seed, but that defendant asked them to
wait until the ensuing day. Defendant claims that plaint-
iffs asked postponement on one or two occasions. It is, how-
ever, undisputed that both parties assented to indefinite
postponements of delivery until after 1st of March. It
is also undisputed that on March 13 or 14 the defendant
notified one of the plaintiffs that it was unwilling there
should be any further postponement, and insisted on their
making immediate delivery, and that on that occasion he
replied that they were ready to deliver the seed at the ware-
house where it was stored, whereupon defendant demanded
that it should be delivered at its store, and informed them
that it could not accept a weight by the scales of the board
of trade, which were not sufficiently accurate. Plaintiff
*M. Gehl* made objection to the delivery at the store, but
went away without definitely refusing or acceding to that
request. It is also undisputed that on the following day —
March 15 — the plaintiffs attempted to make a coercive
and final tender of delivery, which they did by causing to
be presented a warehouse receipt from the owner of the
building where the property was stored, to which was at-
tached a draft calling for payment for 23,761 pounds clover
seed at 8¾ cents, $2,341.59; 159 bags at eleven cents, $17.49;
and interest from March 1, $6.78,— total, $2,365.86. The
accompanying warehouse receipt was dated December 18,.
and permitted delivery only upon payment of storage and
advances, the charges for storage from December 18 to
March 18 not having been paid by the plaintiffs. The
presentation of this draft and warehouse receipt was pre-

ceded by a letter from the plaintiffs containing the following:

"Inclosed we mail you invoice and weights for 159 bags of white clover seed, which you refused to receive yesterday according to your previous agreement. We have taken liberty to make draft through the First National Bank for the amount of invoice with warehouse receipt attached, which we trust will have your prompt attention."

The defendant immediately replied to that letter, notifying plaintiffs that it would not accept the draft, and that the contents of the letter were not in conformity with the facts. Payment of the draft was refused. Nothing further was done until the 26th day of March, when one of the plaintiffs, accompanied by his counsel, again presented a warehouse receipt, this time a new one, with storage charges paid, accompanied by a bill and draft the same as the former, except that the item of interest was omitted. There is some dispute as to the response made by the defendant. Mr. Reel, the defendant's president, testifies that he refused for the expressed reasons that he would not accept a warehouse receipt — that the plaintiffs had to deliver the seed at his store; besides which it had then become so late that the season was quite over, and he felt under no obligation to accept the seed. This is not denied by either the plaintiffs or their attorney, McCabe, who attempted to make the tender, neither of whom professes to be able to remember what the conversation was, further than that the delivery so tendered was refused. After the 26th of March the plaintiffs made several efforts to dispose of the seed, received offers of seven and one quarter and seven cents, and finally sold the seed on the 7th or 8th of April for six and one half cents per pound. They brought action for the difference between the contract price and the price at which they sold, together with some $22 of charges for their own services in selling and hauling the seed to the purchaser.

A special verdict was requested, which found the making of the contract of sale, and the fact that the seed was never in fact delivered to defendant, or paid for, and otherwise contained answers to only the following questions: "(2) Did the plaintiffs, on the 1st day of March, 1897, notify the defendant of their willingness and readiness to execute said contract according to the terms thereof, and did the defendant obtain from the plaintiffs an extension of time for the delivery of said white clover seed, and the payment therefor, from time to time, until the defendant finally refused to accept the same, or make payment therefor? A. Yes." "(6) When the defendant refused to accept said white clover seed, did the plaintiffs thereafter use due diligence and good faith in selling the same on the open market for the best price that could be obtained therefor? A. Yes." "(8) If the court should be of the opinion that the plaintiffs are entitled to judgment, in what sum do you assess their damages? A. $669.95."

The court, in charging the jury with reference to the second interrogatory and the third, which was not answered, substantially instructed them that the principal issue between the parties was as to whether the defendant asked for postponements, telling them that the plaintiffs contended, on the one hand, that they had always been ready to deliver, and had granted postponements at the request of the defendant, while the defendant claimed to have always been ready to receive, but to have granted postponements at the request of the plaintiffs.

Judgment was entered upon the verdict after a motion for a new trial had been overruled, and the defendant appeals.

For the appellant there was a brief by *Nickerson, Roemer & Aarons,* and oral argument by *Chas. L. Aarons.*

For the respondents there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *H. P. Richardson.*

Gehl and another vs. Milwaukee Produce Co.

DODGE, J. By the second question of the special verdict, as limited by the instructions, the court submitted to the jury two questions of fact: first, Did the plaintiffs, on March 1, notify defendant of their willingness to perform the contract? and, second, Were the postponements thereafter had at the instance of the defendant or of the plaintiffs? Such postponements were confessedly assented to by both parties. These were the only issues submitted bearing upon the conclusion whether or not defendant was liable. In this it is obvious the trial court fell into serious error. The true issue was whether the defendant refused to accept the merchandise upon an offer by plaintiffs to deliver in accordance with the contract, and at a time when, by virtue of the admitted postponements, they still had a right to deliver. Confessedly, no breach occurred on March 1, whether plaintiffs did or did not offer at that time, for the defendant did not refuse, but both parties agreed upon a later time for delivery; therefore the question whether offer was made at that time was hardly material, certainly not decisive. Again, it being conceded that the postponements were agreed to by both parties, the question who requested them was wholly immaterial. They being indefinite, either party had the right to terminate them, and demand performance, at any time upon reasonable notice. It is quite obvious from the situation of the parties and location of their places of business that a single day — probably a few hours — would be ample time for making delivery after demand. In the light of the undisputed conditions, the two facts passed on by the verdict are wholly inconclusive. Because plaintiffs were willing to perform on March 1, and agreed to postponement to a future time, it by no means follows that they ever afterward offered delivery, or that defendant ever refused such offer.

The situation strongly indicated, if not conclusively established, may be stated as follows: After nearly two weeks of

delay, the defendant, on March 13 or 14, demanded per-
formance by delivery *at its store.* The plaintiff *Matt Gehl*
denied his duty to deliver at that place, and insisted on de-
fendant's duty to accept the seed at the warehouse. After
insistence on their respective demands, plaintiff held the
matter under consideration, and on the next day attempted
a coercive and final tender in accordance with his conten-
tion as to the rights of the parties, which defendant refused
to accept. We think it plain that both parties considered
their rights fixed thereby, and that no understanding for
any further extension of time existed. Both parties knew
that but a few days remained of the season for sale of clover
seed, and that after those few days it would be of no use to
defendant for another year. It is also obvious that the at-
tempted tender on March 26 was not in contemplation
by plaintiffs, but was due to suggestion of counsel, who,
when consulted as to their rights, found defects in the tender
of March 15. We cannot escape the conclusion that the
interview of the 13th or 14th of March, which is undisputed,
constituted a final offer of performance by each according
to his theory of the terms of the contract as to the place
of delivery and a categorical refusal by the other, so that,
if plaintiff's contention thereon is correct, he might have
brought his action the next day.

Thus the only remaining question on the trial was as to
the place of delivery under a contract silent thereon, in the
light of the evidence of a uniform custom among seed deal-
ers in Milwaukee, and of plaintiffs' knowledge or ignorance
thereof. The court refused to submit to the jury the ques-
tion of the existence of the custom claimed by defendant.
Such refusal could be justified only upon the ground that
such custom was established beyond dispute, for there was
at least abundant affirmative evidence. There was also evi-
dence tending to prove plaintiffs' knowledge of such cus-
tom, which was proved to be general and uniform among

Gehl and another vs. Milwaukee Produce Co.

seed dealers in Milwaukee.   The plaintiffs, while not exclusively or even predominantly, dealers in seed, were shown to have had dealing therein in Milwaukee from about 1891. They did deliver, without question, a portion of the property included in this contract, in exact accordance with the custom proved, and when they sold the white clover seed in question to another Milwaukee dealer they, again without question, made delivery to him in accordance with that custom.   This conduct might well have justified the jury in discrediting plaintiffs' own declarations that they did not know of any custom fixing the place of delivery.

A uniform trade custom is readily accepted by courts to define what is ambiguous or is left indeterminate in a contract, where both parties have knowledge of the custom, or are so situated that such knowledge may be presumed, for the reason that the majority of such transactions are had in view of the custom, and the agreement on which the minds of the parties actually met will thereby be carried into effect.   Jones, Construction of Cont. §§ 100, 103. Where the custom is proved to be known to both, it may even add terms to the contract.   *Scott v. Whitney,* 41 Wis. 504; *Hewitt v. John Week L. Co.* 77 Wis. 548.   Where the custom is general, it will be presumed to have entered into the contract, and one may be bound thereby although ignorant, unless the other party be shown to have knowledge of his ignorance.   1 Duer, Ins. 276; Jones, Construction of Cont. §§ 103, 117; *Hewitt v. John Week L. Co.,* *supra; Shores L. Co. v. Stitt,* 102 Wis. 450; *Jones v. Hoey,* 128 Mass. 585; *Mooney v. Howard Ins. Co.* 138 Mass. 375; *Mand v. Trail,* 92 Ind. 521.

The custom proved in this case was general, for it was uniform in the seed trade in the city of Milwaukee (*Hewitt v. John Week L. Co.*), and unless it was shown that both parties intended to exclude it, or that the plaintiff was ignorant thereof to the knowledge of the defendant, should

have controlled as to the manner and place of delivery.
Such facts should have been submitted to the jury unless
indeed the court resolved them in favor of the defendant.
Failure to so submit them was error, and, without a verdict
thereon, the judgment in favor of plaintiff is without sup-
port.

In the view we have expressed as to the immateriality of
the issues submitted to the jury, a large number of the ex-
ceptions taken and errors assigned become immaterial also,
and need not be discussed. Some, however, raise questions,
which may present themselves on another trial.

In submitting the sixth question, whether plaintiffs ex-
ercised due diligence in selling the seed after refusal by
defendant, the court wholly refrained from instructing the
jury as to what would constitute due diligence. There was
evidence of market price, and actual offers higher than the
price at which sale was actually made. The court's atten-
tion was called to both of these considerations by requests
to instruct and by requests to submit questions. While it
may not be necessary to decide whether either of these re-
quests was in sufficiently perfect form to constitute its refusal
reversible error, it certainly was the duty of the trial court
to instruct the jury as to the standard of "due diligence,"
and to inform them that unreasonable rejection of higher
offers, or neglect to avail themselves of an existing market
price, was not consistent with such standard. In the light
of the situation disclosed by the evidence, he should also
have instructed them that plaintiffs' duty of diligence com-
menced with the refusal of their tender on March 15. The
instruction given in application to the eighth question of the
special verdict — that relating to amount of damages — was
clearly erroneous: first, because the measure prescribed was
the "difference between what they sold the seed for and
what they were to have under the contract," while their
right was the difference between what they could have ob-

tained by due diligence after defendant's refusal and the contract price; secondly, because the instruction authorized " a reasonable commission for selling." Plaintiffs testified that they paid no commission and incurred no expense in making the sale, and that the commission claimed in the complaint was for their own services. This was no proper element of damages.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.