JOHN M. HARPER, trading as JOHN M. HARPER AND COMPANY *vs.* MARY BAIRD AND ROBERT S. BAIRD, Administrators of CHARLES BAIRd, deceased, late trading as a general partner with JAMES C. MCCOMB as a special partner in a limited partnership under the firm name of CHARLES BAIRD AND COMPANY.

*Assumpsit—Contract—Sale of Goods—Examination—Acceptance— Refusal to Accept—Tender—Usage af Trade—Evidence.*

1. When two papers purporting to be counterparts of the agreement upon which the action is founded have been offered in evidence, both of which were signed by the plaintiff and by him sent to the defendants for acceptance, who endorsed their acceptance upon one of the papers and returned it to the plaintiff, but refused the other; *held* that the paper that was accepted by the defendants, and so endorsed, and returned by them to the plaintiff, is the one upon which the plaintiff has the right to rely, and is to govern the jury in reaching their verdict.

2. Questions as to the examination, acceptance or refusal of the goods in question, are for the determination of the jury, and not for the Court, when the evidence is conflicting. The plaintiff is bound to tender or deliver the goods to the defendant in such a manner as to afford a fair opportunity to inspect the same, for the purpose of determining whether they answered the reqirements of the contract.

3. If after a fair opportunity for inspection the defendant unconditionally accepts the goods, or any part thereof, as in conformity with the contract, he cannot

afterwards repudiate such acceptance and refuse to pay the contract price for the goods so accepted.

4. Where the agreement is a single contract, the purchaser of the goods has a right to wait until the entire quantity is ready for delivery, before he is called on either to accept or reject them. It is his right to have the opportunity to see and examine the entire lot, to ascertain whether it altogether complies with the contract and also to such reasonable custody and possession as might be necessary for that purpose.

5. If under the usage and custom of the particular trade there is a class or kind of "skins" known to the trade as "Russian goatskins," in such case the term would designate the *kind* of skins so known to the trade, and would not be merely a geographical description relating to the place of growth or shipment. The seller would have to tender such kind of skins or the buyer would not be bound to accept them.

6. Even if the goods are not of the kind, quality and average weight prescribed in the contract, if the defendant unconditionally accepted the same as his own property, or so used and dealt with them, the plaintiff would be entitled to recover.

(*December 7, 1900.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Charles M. Curtis* and *Benjamin Nields* for plaintiff.

*Horace Greeley Knowles* and *Herbert H. Ward* for defendants.

Superior Court, New Castle County, November Term, 1900.)

ACTION OF ASSUMPSIT (No. 69, November Term, 1898) upon a contract for the sale of Russian goat skins, which contract is fully set out in the charge of the Court.*

LORE, C. J., charging the jury:

Gentlemen of the jury:—It is claimed by the plaintiff in this suit, that by contract dated the twenty-fifth day of October, 1897, he sold to Charles Baird & Company, the defendants, 14,609 goatskins for the sum of $7,406.08. That when the skins were tendered

* See also report of same case in the Supreme Court, later in this volume.

and delivered under the contract, the defendants refused to accept and pay for the same. That in August, 1898, after such refusal, under an agreement between the parties, which was to be without detriment to the rights of either party under the contract of sale, the goat skins were sold at public auction, for the net sum of $5,794.34, which sum the plaintiffs received, leaving an unpaid balance of the contract price of $1,611.74—including certain expenses—which is claimed by the plaintiff as due to him from the defendants under the contract, with interest thereon from August 1st, 1898.

Two papers, purporting to be counterparts of the agreement of October 25, 1897, have been offered in evidence. It is conceded that both of these papers were signed by the plaintiff, and were sent to the defendants, who endorsed their acceptance upon one of the papers and returned it to the plaintiff, but retained the other in their possession. It is claimed that the two papers differ in stating the average weight of the skins, the one endorsed by the defendants and returned to the plaintiff stating them as " averaging about 33 to 34 pounds per dozen;" and in the paper retained by the defendants the word " about " is omitted.

We have been asked to instruct you, which of these two papers is the contract controlling this case. We say to you, that both of these papers having been transmitted to and received by the defendants for their acceptance, that the one accepted by them and so endorsed and returned by them to the plaintiff, is the one upon which the plaintiff had a right to rely, and you are to be governed by that paper as the contract in reaching your verdict.

The contract, offered in evidence by the plaintiff, is in the following terms:

"Philadelphia, October 25, 1897.
" Sold to Mess. Chas Baird & Co.

" For account of whom it may concern about fourteen thousand (14,000) dry salted Russian goat skins, fair merchantable quality,

averaging about 33 to 34 pounds per dozen at six dollars and fifty cents ($6.50) per dozen, landed Philadelphia.     Intermediates and seconds if any to be invoiced at the proportionate invoice price. Cash less $2\frac{1}{2}$ per cent. 10 or 2 per cent. 30 days.   Shipped or to be shipped from the interior of Russia by rail to seaboard to be transhipped by steamer or steamers via port or ports to Philadelphia. Insurance subject to 10 per cent. particular average.   Skins to be accepted with or without sea damage, if any sea damage a fair allowance to be made in accordance with the above.   Quality of skins to be in accordance with the above or an allowance to be made to render them equal thereto.   Any question arising out of this contract not otherwise provided for to be settled by arbitration. No arrival, no sale.

> (Signed) "JNO M HARPER & Co.
> (Endorsed across the face) "Accepted.
>                     "CHAS BAIRD & Co."

There is no dispute, as to the amount of the unpaid balance of the contract price of the skins, with expenses, viz., $1611.74 as ascertained by the auction sale.   The dispute relates to any liability therefor under the contract.

The plaintiff claims that he has complied with the contract, and that the defendants were bound to accept and pay for the skins which he tendered and delivered; and further, that in point of fact the defendants did actually accept and receive them.

The defendants contend, on the other hand, that the skins were not, "dry salted Russian goat skins, fair merchantable quality, averaging about 33 to 34 pounds per dozen;" that they were not bound to accept and receive the skins tendered, and distinctly deny that they ever did accept or receive them.

The issues raised are mainly upon the facts.   The law governing the case is quite well settled; we shall only deal with it so far as we have been asked by the respective parties.

We cannot charge you, as a matter of law, that the plaintiff is entitled to recover because of the alleged examination by the defen-

dants of sample bales of the first and second shipments; or of the alleged acceptance by the defendants of the orders of the plaintiff on the steamboat company for the skins; or the alleged storage of the skins with Reighle and Griffith in Philadelphia; or of the alleged offers to sell the same on account of the defendants; or because of the alleged acceptance and retention by defendants of a negotiable warehouse receipt for the third shipment of skins; if any such transactions there were, for the reason, among others, that there is such a conflict of evidence upon all these questions of alleged acceptance or refusal of the skins and acts of ownership, alleged against the defendants, as to remove them from the province of the Court as conclusive determinations of law; and leave them clearly within the field of disputed facts,—the truth of which it is the special duty of the jury to ascertain and decide.

The plaintiff is bound to tender or deliver the skins to Charles Baird and Company in such manner as to afford them a fair opportunity to inspect the same, for the purpose of determining whether they answered the requirements of the contract; and a tender under circumstances which would not afford such fair opportunity of inspection would not be sufficient.

You are to determine from the evidence, whether the alleged storage of the skins in Philadelphia, or the alleged offering of the skins for sale by Charles Baird and Company, or any other alleged act or acts of Charles Baird and Company, severally or together, constituted or proved an acceptance of the skins by Charles Baird and Company under the contract. In other words, the question whether Charles Baird and Company accepted or rejected the skins, or any part thereof, is for your determination upon a careful consideration of all the evidence upon the subject.

If after a fair opportunity for inspection, Charles Baird and Company unconditionally accepted the skins, or any part thereof, as in conformity with the contract, they could not afterwards repudiate such acceptance and refuse to pay the contract price for the skins so accepted.

Under our interpretation, this agreement is a single contract

for the sale of about 14,000 goat skins. Under it Charles Baird and Company had a right to wait until the entire quantity of skins was ready for delivery, before they were called upon either to accept or reject them. It was their right to have the opportunity, to see and examine the entire lot, to ascertain whether it altogether complied with the contract, and also to such reasonable custody and possession of the skins as might be necessary for that purpose.

The contract calls for "*dry salted Russian goat skins.*" If you believe from the evidence, that under the usage and custom of this particular trade there is a class or kind of skins known to the trade as "Russian goat skins;" then in that case the term would designate the kind of skins so known to the trade, and would not be merely a geographical description, relating exclusively to the place of growth or shipment. In such case also, Charles Baird and Company under the contract would be entitled to the kind known in the trade as Russian goat skins; and if the skins tendered were not of that kind, Charles Baird and Company would not be bound to accept them. Such a tender would not be a compliance with the contract.

It would not be a fulfillment of the contract on the part of the plaintiff, again, if the skins tendered were not of a "*fair merchantable quality.*"

In like manner, if the entire lot of skins did not *average* "*about 33 to 34 pounds per dozen,*" the contract would not be met on the part of the plaintiff. We instruct you that under the terms of the contract, the average weight of 33 to 34 pounds per dozen applies to the entire lot of skins.

The burden of proof is upon the plaintiff. He must show to your satisfaction, by a preponderance of the evidence, that he has complied with his contract, to entitle him to a verdict; unless such compliance has been waived by Charles Baird and Company or the defendants. Such proof is necessary, therefore, to entitle him to a verdict. In reaching a verdict, it is your duty to consider all the facts and circumstances proven in the case in ascertaining such preponderance of the evidence.

Guided by these instructions of the Court on the questions of law in this case, it now becomes your duty to examine carefully and conscientiously all the evidence and all the circumstances surrounding this case.

If from the evidence you are satisfied that the skins tendered to Charles Baird and Company by the plaintiff were of the kind, quality and average weight prescribed by the contract, the plaintiff will be entitled to recover the balance of the contract price, if any, which is unpaid. In like manner he would be entitled to recover, even if the skins were not of the kind, quality and average weight prescribed in the contract; if Charles Baird and Company unconditionally accepted the said skins as their own property or so used and dealt with them.

If, however, you believe that the skins tendered were not of the kind, quality or average weight named in the contract, and that the defendants did not unconditionally accept them as their property, or so use or deal with them, then your verdict should be for the defendants.

(Exceptions noted for the plaintiff and the defendants.)

Verdict for plaintiff for $1,843.83.