GRANVILLE A. BEALS, Doing Business as the GREENWICH MILLS, Respondent, *v.* MICHAEL HIRSCH, Appellant.

First Department, July 6, 1925.

Sales — action by seller of cloth to recover damages for refusal of buyer to accept — seller refused to permit buyer to examine goods when tendered — Personal Property Law, § 128, subd. 2, gives buyer right to examine on delivery and before acceptance in absence of contrary agreement — no contrary agreement shown — instructions — error to charge that defendant did not have right to examine before acceptance — error to charge as matter of law that defendant's demand for examination before acceptance was repudiation of contract — contract called for sixty-yard pieces and complaint alleged full performance — proof of tender of fifty-one and one-quarter yard pieces was not proof of full performance.

A buyer of goods has the right under subdivision 2 of section 128 of the Personal Property Law, where there is no contrary agreement, to inspect the goods upon delivery and before acceptance, and where that right is denied him by the seller he is not required to accept the goods and is not liable for rejecting them.

Accordingly, in an action to recover damages for refusal to accept cloth, in which it appears that the seller refused to deliver the goods to the buyer unless the buyer would accept them without examination, it was error for the court to charge that the buyer did not have the right to examine the goods before delivery and acceptance but that he should have accepted the goods and availed himself of the remedy offered by the statute, where, on examination after acceptance, the goods are found not to comply with the terms of the contract of sale.

It was error for the court to hold as a matter of law that the buyer's demand to examine the goods before accepting them constituted a repudiation of the contract.

The plaintiff's proof to the effect that fifty-one and one-quarter-yard pieces of cloth were tendered was not proof of the alleged full performance of the contract, which called for sixty-yard pieces of cloth, and for that reason the plaintiff is not entitled to recover.

APPEAL by the defendant, Michael Hirsch, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of June, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of July, 1923, denying defendant's motion for a new trial made upon the minutes.

*Whitman, Ottinger & Ransom* [*William L. Ransom* of counsel; *Colley E. Williams* and *George G. Bogert* with him on the brief], for the appellant.

*I. Gainsburg* [*Joseph P. Segal* of counsel], for the respondent.

MERRELL, J.:

The plaintiff, during all the times mentioned in the complaint, was engaged at East Greenwich, R. I., in the manufacture of woolen cloth, under the trade name of Greenwich Mills. Prior to October 8, 1920, the plaintiff had manufactured for and delivered to the defendant a woolen cloth designated as "Style 117/1." This cloth had been found by the defendant to be of lighter weight than he required in his business, and on October 8, 1920, the plaintiff and the defendant at the city of New York, where the defendant was engaged in business and the plaintiff had a sales office, entered into an agreement in writing whereby the plaintiff agreed to manufacture 335 pieces of woolen cloth of sixty yards to the piece, in ten different patterns, at the contract price of three dollars and ninety-five cents per yard. These goods were of a special weight and pattern desired by the defendant, and each of the ten styles was covered by a separate order designated "via Special" which the plaintiff testified signified that the goods were to be sent over by messenger from plaintiff's shipping department. The contract provided that the 335 pieces of goods of the ten styles were to be of the said quality 117/1 and were to weigh twelve to twelve and one-half ounces to the yard and were to be woven with more "picks" to give a slightly firmer cloth than that theretofore manufactured by the plaintiff for the defendant. While the goods were in manufacture, by agreement of the parties, the number of pieces was reduced from 335 to 285 pieces. The goods were manufactured at plaintiff's mills and finished at plaintiff's finishing department at the city of Philadelphia, Penn. Under the terms of the contract deliveries of the goods were to be made starting in November and were to be completed "early in January — sooner if possible."

In his complaint the plaintiff alleges that after the making of the contract the plaintiff made all necessary preparations for the manufacture of said goods in accordance with the specifications

First Department, July, 1925. [Vol. 214

contained in said contract and entered upon the manufacture thereof; and that within the time provided in said agreement for the delivery of said goods and on or about the 27th day of November, 1920, and the 3d day of December, 1920, the plaintiff duly tendered and offered for delivery to the defendant portions of the goods manufactured by the plaintiff in accordance with said agreement and specifications, but that the defendant refused to receive and accept the same in accordance with said contract and repudiated the said agreement; and that thereupon the plaintiff elected to treat the defendant's said refusal to perform and receive delivery of said goods in accordance with said contract as a breach and repudiation thereof and an abandonment by defendant and to hold the defendant liable therefor, and duly notified the defendant thereof; and that upon such refusal of the defendant to receive and accept delivery of said goods in accordance with said contract, the plaintiff substantially completed the entire quantity thereof and notified the defendant that the same would be held for his account and risk and sold for the defendant's account and risk at the best price obtainable therefor. Plaintiff further alleges in his complaint that within a reasonable time after defendant's refusal to receive and accept the said goods which plaintiff agreed to manufacture and sell to the defendant, plaintiff sold the said goods, which amounted to 15,675 yards, at the price of one dollar and twenty-two and one-half cents a yard less than the price which the defendant agreed to pay therefor, and which was the best price that could be obtained therefor with due diligence. The plaintiff further alleges in his complaint that he duly performed all the terms, covenants and conditions of said agreement on plaintiff's part to be kept and performed, except in so far as he was prevented from so doing by the aforesaid acts and conduct of the defendant; and that plaintiff was at all times ready, able and willing to perform said agreement and offered and tendered performance thereof to the defendant; and that by reason of the premises the plaintiff suffered damages in the sum of $19,201.88, for which judgment was demanded.

Upon the trial there was little dispute in the evidence as to the essential facts in the case, and it appeared from the evidence that on November 27, 1920, two agents of the plaintiff tendered to the defendant ten pieces of goods alleged to be in conformity with the contract, and demanded that the defendant accept and receipt therefor. The goods thus tendered were wrapped in paper and tied. When the ten pieces reached the defendant's place of business, plaintiff's representative presented to defendant a receipt for the ten pieces and requested that the defendant take the goods and sign

such receipt. Plaintiff's agent testified that the defendant then stated: " I want to have the goods examined before I sign for it," and that plaintiff's agent replied: " I can't leave the goods here, unless it is signed for. I don't care what you do, as long as you put your signature on it," but that the defendant repeated that he wanted to have the goods examined before receipting therefor. As to this transaction the defendant testified that when plaintiff's representatives brought the ten pieces to his place of business the defendant told them that he wanted the goods examined, either there or at plaintiff's place, before he signed for them; and that plaintiff's representative replied to such request to examine: " No, you have to accept them and sign for them before examination." The testimony then shows that plaintiff's employees then took the goods back to the plaintiff's rooms, and two days later returned with the same ten pieces of goods and retendered them to the defendant; and that the defendant again refused to take them in for the same reason, namely, that he was denied the right of examination. On the day following, November 30, 1920, plaintiff's representatives, for the third time, took the same ten pieces of goods, together with thirteen additional pieces, to the defendant's office and tendered the twenty-three pieces to the defendant. The defendant again refused to receipt for the pieces upon the ground that he wished an examination thereof before receipting, and the twenty-three pieces were taken away because of defendant's refusal to receipt therefor. As to the transaction on November thirtieth, the defendant testified that the twenty-three pieces were brought to defendant's place of business on trucks, and that defendant was again asked to sign for them, and that the defendant replied to plaintiff's agents: " I want to have an opportunity to examine them, either here in my place or I would go down to Mr. Beal's office and would examine them there," and that defendant sent plaintiff's representatives down to tell the plaintiff that the defendant wished to examine the goods, either at his place or in the plaintiff's place; that the representatives then left and shortly thereafter returned stating that there was " nothing doing " and that the defendant had to sign for the goods and accept the goods, and that he could then examine them. On the following day, December 1, 1920, two other pieces of the goods were tendered to the defendant by plaintiff's representatives. This tender was made at four o'clock in the afternoon of a dark, rainy day. Plaintiff's agents testified that they then told the defendant that he might examine the goods at that time in their presence, but that the defendant declined to do so. The defendant's version as to the final tender of the two pieces on December 1, 1920, was that the tender was made

late in the day of a dark, rainy, December afternoon when it was impossible for the defendant to examine the two pieces, and that he asked that said pieces be left there for future examination, which was refused him. On December 1, 1920, following the transactions last mentioned, the plaintiff wrote the defendant concerning the tenders which had been made and defendant's failure to accept and receipt therefor, notifying the defendant that the goods would be immediately sold without price reserve at private or public sale, and that the defendant would be charged and held responsible and liable to the plaintiff for the difference between the contract price and what might be realized upon such sale occasioned by defendant's repudiation of the contract. To such communication the defendant, on December 2, 1920, replied that when the pieces of goods were brought by plaintiff's men the defendant wanted a reasonable opportunity to examine the goods before accepting them, and that such opportunity was refused him; that the plaintiff understood why the defendant wanted to examine the goods, which were special goods and were to be woven with more picks and firmer than the samples given by the plaintiff to the defendant, and calling attention to prior troubles which the defendant had had with the plaintiff by accepting and signing for goods and thereafter finding them not up to contract, and declining further dealing with the plaintiff under said contract.

According to the undisputed evidence upon the trial it appeared that the pieces of cloth manufactured by the plaintiff under said contract did not contain in any instance more than fifty-three yards, and that the average yardage in each piece was fifty-one and one-quarter yards.

At the close of the plaintiff's case the defendant moved to dismiss the complaint on the ground that the plaintiff had failed to prove a cause of action against the defendant: *First*, that the plaintiff's proof showed that he had tendered or caused to be carried to the defendant's place of business during the latter part of November and first of December, pieces of goods containing no more than fifty-three yards to the piece, and some of them as low as fifty yards to the piece, as an alleged tender in compliance with the terms of the contract; *second,* that it appeared from the undisputed evidence that when the goods were tendered the defendant requested the right to examine the same for the purpose of determining whether they were in conformity with the contract, and that such request was denied by the plaintiff. The defendant also moved for a nonsuit upon the ground that the contract was an installment contract requiring delivery of the goods in installments over a period of not less than three months, the goods to be paid

for separately at the end of each month after delivery, and that there was no proof that the plaintiff was justified in failing and refusing to make further tenders on the contract after the defendant had merely requested permission to examine the goods tendered during the latter part of November and the first of December. Thereupon, at the request of counsel for the plaintiff, the court permitted the plaintiff, against defendant's objection and exception, to reopen his case and to give evidence as to a custom in the trade that where a contract specified sixty yards to the piece, the actual pieces might run six or seven yards less and still be in substantial compliance to the contract. The proof thus offered by the plaintiff was of little avail in support of plaintiff's cause of action in view of the fact that the undisputed testimony was that the pieces of cloth in question all ran less than fifty-three yards to the piece, and that the average yardage of the pieces was fifty-one and one-quarter yards to the piece. After this final testimony offered by the plaintiff, counsel for the defendant renewed his motion for a dismissal of the complaint on all of the grounds mentioned at the time the plaintiff first rested. Defendant's said motion was denied, to which the defendant duly excepted. The motion of the defendant to dismiss the complaint was renewed at the close of the evidence in the case upon all the grounds mentioned at the end of the plaintiff's case, and upon the further ground that the plaintiff had failed to properly prove damages. This motion was denied, to which the defendant duly excepted. Thereupon the court held that the only question for the determination of the jury was the assessment of damages in plaintiff's favor by reason of defendant's repudiation of the contract in suit. In charging the jury the court said, with reference to defendant's claimed right to examine the goods prior to acceptance: " Hirsch, the defendant, claimed the right before he accepted delivery to examine the goods, but as no such right was reserved in the contract, the Court ruled during the trial that he was bound to receive the goods, because the law provided a perfect remedy to him in the event that the goods were not made up according to contract. In other words, he had the right to examine them within a reasonable time after acceptance, but for reasons satisfactory to him he refused to receive them, and in his letter of December 2d, 1920, in answer to letters written to him by the plaintiff, he informed the latter that he was through, and that the matter so far as he was concerned was at an end."

We think that the court's position in this respect was erroneous, and that the court erred in thus instructing the jury. Such instruction was in direct conflict with the provisions of section 128 of the Personal Property Law (as added by Laws of 1911, chap.

571), known as the Sales of Goods Act. In thus instructing the jury the trial court confined the defendant's right to inspection to an examination of the goods within a reasonable time after their receipt, whereas, by subdivision 2 of section 128 of the Personal Property Law, the defendant was entitled, in the absence of an express agreement to the contrary in the contract, on request, to a reasonable opportunity of examining the goods for the purpose of ascertaining whether they were in conformity with the contract. The court was undoubtedly correct in charging the jury that the law provided the defendant with a remedy, even though he had accepted the goods, if the goods were not thereafter, within a reasonable time, found to be up to contract. Thus, it is provided by subdivision 1 of section 128 of the Personal Property Law that " Where goods are delivered to the buyer, which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity to examine them for the purpose of ascertaining whether they are in conformity with the contract."

Subdivision 2 of section 128 of the Personal Property Law provides as follows: " Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract."

The undisputed evidence in the case shows that such an examination was all the defendant asked upon the several tenders of the pieces of goods by plaintiff's agents. The evidence shows that the defendant wanted the goods, but that he wished to examine the same before receipting therefor to ascertain whether they were in conformity with the contract. Subdivision 1 of section 128 of the Personal Property Law clearly relates to an examination after delivery, whereas, subdivision 2 of said section accords to the buyer the right of examination " when the seller tenders delivery of goods to the buyer," unless otherwise provided in the contract. The buyer may waive this primary right of examination before accepting delivery of the goods and have recourse to the right of examination within a reasonable time after delivery, but the statute clearly accords to the buyer the right to examine before accepting delivery. The statute is so plain and unambiguous in its terms as to require the citation of no authority, other than the statute itself. In *Glass & Co.* v. *Misroch* (239 N. Y. 475) the Court of Appeals, discussing the rights of inspection before and after delivery of the goods, said (at p. 482): " The buyer, when delivery is tendered, may refuse to assent to it at all

(taking, of course, the risk of liability for damages), or may assent subject to the condition that he be allowed to see the goods before delivery or appropriation shall be deemed to be complete. ' *Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract* ' (Pers. Prop. Law, § 128, subd. 2). The law was the same before the statute was enacted. ' The rule is that a tender of bulky articles in the performance of an agreement must be seasonably made, so that the person may have an opportunity to examine the articles tendered, and see that they are such as they purport to be, and such as he is entitled to demand, before the close of the day on which the delivery is to be made' (*Croninger* v. *Crocker*, 62 N. Y. 151, 158; cf. *McNeal* v. *Braun*, 53 N. J. L. 617; *Lummis* v. *Millville Mfg. Co.*, 72 N. J. L. 25, 26; Williston Sales, §§ 455, 478, 479). There is a difference in other words between inspection following delivery, and *inspection to determine whether delivery shall be permitted. Until that determination is made, the transaction is in fieri.* Delivery remains inchoate while the buyer refuses to treat it as perfected. Even taking the goods in, may be so qualified by notice or agreement that possession will not operate as an expression of assent. ' The buyer is entitled to examine the goods to decide whether he will become owner, and *until the examination is completed or waived, he is under no obligation to accept the goods* ' (Williston Sales, § 472). The examination *is* waived, however, in so far as it is a condition precedent to the transfer of the property, when there is an assent to delivery without reservation or condition accompanying the receipt and qualifying or postponing or neutralizing its effect. Examination prior to such acceptance is indeed, as we have seen, to be permitted ' on request ' (Pers. Prop. Law, § 128, subd. 2), yet even when requested, it is immediate and summary, closing, at least in ordinary conditions, with the close of the day, for which reason tender must be made at a seasonable hour (*Croninger* v. *Crocker, supra*)." (Italics are the writer's.)

It would, therefore, seem that the trial court erred in holding as matter of law that by reason of defendant's demand to examine the goods prior to accepting delivery thereof, the defendant repudiated the contract and rendered himself liable to respond to the plaintiff in damages.

We are also of the opinion that the plaintiff's tender of goods averaging fifty-one and one-quarter yards to the piece was not a substantial compliance with the contract in suit. The complaint alleged full performance on plaintiff's part, and the court held

as matter of law that the plaintiff had fulfilled the terms of the contract, and that the tender of goods averaging fifty-one and one-quarter yards to the piece was sufficient. The plaintiff in his complaint alleged tender of goods manufactured by the plaintiff in accordance with the contract, and that the plaintiff performed all the terms, covenants and conditions of said contract. The testimony was to the effect that the plaintiff had failed to deliver pieces of goods containing sixty yards as specified in the contract. Having pleaded full performance, plaintiff was in duty bound to prove the same. (*Bogardus* v. *New York Life Ins. Co.*, 101 N. Y. 328; *Jacob & Youngs, Inc.*, v. *Kent*, 230 id. 239, 241; *Hoffman* v. *Metropolitan Life Ins. Co.*, 135 App. Div. 739; *Hecla Iron Works* v. *Hall & Grant Construction Co.*, 115 id. 126; *Williams* v. *Fire Association*, 119 id. 573.) Quantity is always of the essence of a sales contract, and the seller is bound to tender the amount of goods contracted for in order to hold the buyer for performance. Section 125 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides (Subd. 1) that " Where the seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them * * *."

We are, therefore, of the opinion that by reason of the failure of the plaintiff to show a tender of the goods in conformity with the contract, and by reason of the court's erroneous attitude in regard to the defendant's right of examination of the goods tendered prior to acceptance of delivery thereof, and the erroneous instruction to the jury in this respect, to which due exception was taken by the defendant, the judgment and order appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., DOWLING, McAVOY and BURR, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.