Argued at Pendleton November 1, affirmed December 6, 1927, rehearing denied January 10, 1928.

## MARK CROSLAND v. FRANK SLOAN.

(261 Pac. 701.)

**Sales—Buyer Defaulting in Initial Payment cannot Recover Damages Against Seller.**

1. Buyer who defaulted in initial payment could not recover in an action against seller for damages.

---

1. See 25 R. C. L., Sales, § 334.

Sales—Seller Need not Offer Delivery Where Buyer Repudiates Before Delivery is Completed.

2. If buyer of sheep repudiated contract before seller had completed delivery, there would be no further obligation on part of seller to offer delivery, as law does not require the doing of a vain or idle thing.

Sales—Seller cannot Keep Initial Payment Where Both Parties Refused to Proceed With Contract.

3. If both buyer and seller, after initial payment by buyer, stopped short and refused to proceed with contract, seller would not be entitled to keep initial payment.

Sales—Reasonable Opportunity of Inspection must be Afforded Buyer of Sheep (Or. L., § 8210, Subd. 2).

4. Under Section 8210, subdivision 2, Or. L., buyer of sheep is not required to accept delivery without first having had reasonable opportunity for inspection.

Sales—Buyer Need not Tender Balance Due on Purchase Price Prior to Reasonable Inspection.

5. Buyers need not, prior to reasonable inspection of goods, tender balance due on purchase price, but it is sufficient for them to be ready, able and willing to comply with their contract.

Sales—Nature of Contract Determines Kind of Inspection Buyer is Entitled to.

6. The kind of inspection to which the buyer is entitled depends on the nature and character of the contract.

Sales—One Purchasing Quarter Coarse Ewes of Various Ages cannot be Required to Take Sheep "Gate Run" from the Field.

7. Under contract for sale of sheep designated as "quarter coarse ewes of various ages," a buyer cannot be compelled to accept such sheep as they are driven from field through gate into public road, since it is necessary to "mouth them out" in order to ascertain, with any degree of certainty, their ages.

Sales—Seller's Denial of Reasonable Inspection Constitutes Failure of Tender of Delivery.

8. If seller denies buyer right of inspection such as law contemplates, there is a failure of tender of delivery.

Sales—Initial Payment cannot be Forfeited Where Buyer is not Given Opportunity for Reasonable Inspection.

9. There can be no forfeiture of initial payment by buyer where he was not given opportunity for reasonable inspection, since without such opportunity there can be no refusal of acceptance.

2. See 23 R. C. L., Sales, § 234.
4. See 23 R. C. L., Sales, § 256.

Sales—Buyers, Denied Right of Reasonable Inspection, are Entitled to Recovery of Advanced Payment.

10. Buyers of sheep, ready and able to comply with contract at time and place of delivery, but denied right of reasonable inspection, are entitled to recovery of initial payment.

Sales—Seller Offering to Deliver Sheep and Giving Buyer Opportunity for Reasonable Inspection, Which was Refused, can Retain Initial Payment.

11. Seller, who offered to deliver sheep conforming to contract and gave buyers opportunity for reasonable inspection, which was refused, would be entitled to retain initial payment.

Customs and Usages—Parties to Contract for Sale of Sheep will be Presumed to have Contemplated General Custom as to Inspection of Sheep.

12. Where it is general custom of sheep men in eastern Oregon to put sheep in corrals for purpose of inspection, law will presume that seller of sheep had knowledge of it, and that parties to contract for sale of sheep contemplated such when contract was executed.

Customs and Usages—Evidence in Action on Contract for Sale of Sheep as to General Custom Relative to Inspection of Sheep Sold Under Similar Contracts was Properly Admitted, Though not Pleaded.

13. In action by buyer of sheep to recover initial payment on ground of breach by seller, evidence tending to show general custom in eastern Oregon, relative to inspection of sheep where sold under similar contracts, was properly admitted, though not pleaded.

Sales—Reason Why One of Checks Representing Initial Payment was Dishonored Held Admissible to Show Good Faith of Buyers.

14. In action by buyers to recover initial payment represented by checks, one of which was dishonored, testimony of buyer as to why one of such checks was dishonored was admissible as tending to show that buyers were acting in good faith and willing to proceed with contract.

---

Customs and Usages, 17 C. J., p. 455, n. 68, p. 516, n. 95, p. 520, n. 44 New.

Sales, 35 Cyc., p. 171, n. 42, 43, p. 225, n. 29, 30, p. 226, n. 31, p. 229, n. 54, p. 256, n. 18, p. 602, n. 47 New, p. 603, n. 53, p. 610, n. 41 New, p. 611, n. 53, 62.

From Union: J. W. KNOWLES, Judge.

In Banc.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard,* with an oral argument by *Mr. George T. Cochran.*

For respondent there was a brief over the name of *Messrs. Green & Hess,* with an oral argument by *Mr. R. J. Green.*

BELT, J.—This is an action for money had and received. On September 22, 1926, plaintiff and his assignors, William Dobbin, W. D. Hanks and J. E. Peterson, entered into a written contract with the defendant to purchase 1,100 ewes at $11.50 per head, to be delivered at Summerville, Oregon, "about" October 1, 1926. It was specified that the sheep should be quarter coarse ewes and white faced. One hundred and fifty of the ewes were to be two and three years old; 800 four years old and the balance five years; but it was provided that the sheep five years of age should not exceed 200 in number. A payment of $1,100 was required upon execution of the contract—"to be forfeited covering all damage in event of buyer not receiving said sheep as per this contract"—the balance to be paid upon delivery. The contract was executed at Duncan, Oregon, and about 720 sheep were shipped from that place to La Grande and unloaded in the stockyards en route to place of delivery. While at La Grande, a partial inspection of the sheep was made, and, according to the testimony of the plaintiff, it was found that many of them did not conform to the contract as to age and grade of wool, and some of them were black faced. The buyers requested further opportunity for inspection at place of delivery and on the following day, September 30, 1926, the sheep were trailed to the

Osborne ranch at Summerville where they were placed
with other sheep in a field of about 160 acres. A dis-
pute arose as to whether the sheep conformed to the
contract. The purchaser asked that they be placed
in corrals so that they could be "mouthed out" and
otherwise examined. The seller, through his agent
Bagan, refused to comply with this request and in-
sisted that the sheep be taken "gate run" from the
field—only crippled and sick ones to be rejected.
Buyers thereupon telegraphed Sloan demanding de-
livery according to contract. He answered: "Ewes
there three days. Bagan had my instructions how to
deliver them. Ewes there yet if you want them ac-
cording those instructions." Thus this law action
was precipitated.

In making the initial payment, checks aggregating
$1,100 were issued. All of them were paid in due
course except one drawn on the First National Bank
of Union, Oregon, for $400, and signed "H. J. P. Co.
by W. D. Hanks," upon which payment was refused
as there were no funds in the account upon which it
was drawn. The seller, therefore, received only $700
upon execution of the contract.

This action was commenced to recover the advance
payment of $700. Defendant filed a counterclaim de-
manding judgment for $400, or the amount of the dis-
honored check. A verdict was returned for plaintiff.
Defendant appeals.

1. At the beginning it is well to bear in mind that
this is not an action for damages. If it were, plaintiff
could not recover by reason of the default in the in-
itial payment. Unquestionably there was a breach of
the contract by the buyers. He who seeks damages
must do more than show a default of the other party.
There must be a substantial compliance with the con-

tract on his part. Cases cited sounding in damages are not in point.

Turning to the contract we find that the $1,100 was to be "forfeited covering all damage in event of buyer not receiving said sheep as per this contract." It will thus be seen that the right to claim forfeiture is predicated upon tender of delivery of sheep as provided in the contract and the refusal of the buyer to accept same.

2. Of course, if the buyers repudiated the contract at La Grande and stated that they would not receive the sheep, there would be no further obligation on the part of the seller to offer delivery. The law does not require the doing of a vain or idle thing: *Wigan* v. *La Follette,* 84 Or. 488 (165 Pac. 579). We think there is no reasonable basis for the claim that the buyers thus repudiated the contract for it appears, without contradiction, that they insisted upon the right of inspection at place of delivery. Nothing was said at La Grande which would indicate that the buyers intended to reject the sheep.

3. It is true that the seller could not be held in damages for failure to deliver the sheep at Summerville until he had been paid $1,100, but it does not follow that he could refuse to make such delivery and bring about the forfeiture of an advance payment. If both parties, after the payment of $700, had stopped short and refused to proceed with the contract, the seller, in equity and good conscience, would not have been entitled to keep the advance payment.

4. The seller contends there was an offer of delivery of the sheep, but that the buyers arbitrarily refused to accept same. This brings us to the question of inspection. Certainly it will not be argued that the buyers were obliged to accept delivery with-

out first having had a reasonable opportunity for inspection. They had the right to know the kind and grade of sheep they were buying. As provided by subdivision 2, Section 8210, Or. L.:

"Unless otherwise agreed, when the seller tenders delivery of goods to the buyer, he is bound, on request, to afford the buyer a reasonable opportunity of examining the goods for the purpose of ascertaining whether they are in conformity with the contract."

5. It was not incumbent upon the buyers, prior to such inspection, to tender the balance due on the purchase price. It was sufficient for them to be ready, able and willing to comply with their contract.

6, 7. The kind of inspection to which the buyers were entitled depended upon the nature and character of the contract: *Kitterman* v. *Eagle Pine Co.*, 122 Or. 137 (257 Pac. 815). Having in mind that the sheep were to be quarter coarse ewes of various ages, it seems unreasonable to us, as no doubt it did to the jury, that the buyers should be compelled to accept these sheep as they were driven from the field through a gate into a public road. It was necessary to "mouth them out" in order to ascertain, with any degree of certainty, their ages.

8, 9. If the seller denied the right of inspection, such as the law contemplates, there was a failure of tender of delivery: *Eaton* v. *Blackburn*, 52 Or. 300 (96 Pac. 870, 97 Pac. 539, 132 Am. St. Rep. 705, 20 L. R. A. (N. S.) 53); *Beals* v. *Hirsch*, 214 App. Div. 86 (211 N. Y. Supp. 293), 242 N. Y. 529 (152 N. E. 414); *Thick* v. *Detroit etc. Ry.*, 137 Mich. 708 (101 N. W. 64, 109 Am. St. Rep. 694); *Harper* v. *Baird*, 3 Pennew. (Del.) 110 (50 Atl. 326); 35 Cyc. 225. If the buyers did not have this opportunity for inspection, it can-

not be said that they refused to accept the sheep, and, if there was no refusal of acceptance, it follows that there can be no forfeiture. The principles of law as announced in *Livesley* v. *Strauss,* 104 Or. 356 (206 Pac. 850, 207 Pac. 1095), are applicable. It was there said:

"If a contract has been put an end to by the refusal of the seller to perform, the buyer may recover any money paid by him in part performance; and, furthermore, if neither party is ready by the prescribed time, both are in default, and the advances may be recovered by the buyer."

10, 11. We conclude that, if the buyers were ready, able and willing to comply with the contract at the time and place of delivery, but were denied the right of reasonable inspection, plaintiff would be entitled to recovery of money advanced. On the other hand, if the seller offered to deliver sheep conforming to the contract and gave the buyers an opportunity for reasonable inspection, but they refused to accept them, then, under such circumstances, the seller would be entitled to recover upon his counterclaim in the sum of $400.

It would greatly extend this opinion were we to review all of the requested instructions which the court refused to give and upon which the appellant predicates error. These assignments will, therefore, be passed with the statement that such requested instructions are at variance and inconsistent with the law here declared. The instructions given by the court fairly stated the issues and in some instances were more favorable to defendant than the law warrants. We see no reason for complaint in this respect.

12, 13. Error is assigned in admitting evidence of a general custom among sheep men throughout Eastern Oregon to the effect that, where sheep are contracted to be delivered at a future date and are to be of certain specified grades and ages, it is customary to put them in corrals for the purpose of inspection. Counsel for appellant concedes that a general custom need not be pleaded in order to render evidence admissible to establish it, but insists that the facts do not bring this case within such rule. Eastern Oregon is a "land of wide open spaces." Some of its counties are larger than some European countries. It extends from the summit of the Cascade Mountains on the west to the Idaho line on the east; from the Washington boundary on the north to Nevada on the south. If it were the general custom of sheep men in this vast territory to make the kind of inspection for which plaintiff contends, the law will presume that the defendant had knowledge of it and that the parties contemplated such when the contract was executed: *Hurst* v. *Larson*, 94 Or. 211 (184 Pac. 258); *Simms* v. *Sullivan*, 100 Or. 487 (198 Pac. 240, 15 A. L. R. 678). In 17 C. J. 455 it is said, relative to general custom:

"It is sufficient to comply with the requirement of generality that the usage in question be universally recognized and observed by those engaged in the kind of transactions to which it applies within the region where it is claimed to exist."

Also see *Harrison* v. *Birrell*, 58 Or. 410 (115 Pac. 141); *Gehl* v. *Milwaukee Produce Co.*, 105 Wis. 573 (81 N. W. 666); *Miller* v. *German Seed & Plant Co.*, 193 Cal. 62 (222 Pac. 817, 32 A. L. R. 1215). It was proper to admit evidence tending to show the general

custom in Eastern Oregon relative to the inspection of sheep where sold under similar contracts.

14. Error is assigned for the reason that plaintiff was permitted to introduce evidence for the purpose of explaining why the check drawn on the First National Bank of Union for $400 was dishonored. It appears from the record that Hanks and Peterson were partners and at one time had a partnership account upon which checks were drawn as in the instant case. Later the firm account was transferred to the individual account of Peterson. The latter testified that he had given instructions to the bank that any checks drawn in the firm name be charged against his individual account. We agree with counsel for appellant that the defendant had no concern with this arrangement with the bank, but we think the testimony was admissible as tending to show that the buyers were acting in good faith and were willing to proceed with the contract. At most, the evidence was not damaging to defendant for the court clearly instructed the jury that the buyers had committed a breach of contract in making the initial payment.

This action was tried in a section of the state where men know sheep and understand what constitutes fair dealing by those who engage in such business. It may be that the jury was of the opinion that the defendant was trying to pawn off some sheep of an inferior grade and, therefore, did not want the buyers to have a reasonable opportunity for inspection.

The judgment of the lower court is affirmed.

AFFIRMED.    REHEARING DENIED.

BEAN, J., did not participate in this opinion.