Argued January 13; affirmed January 26, 1937

OTTO SEIDENBERG, Inc., *v.* TAUTFEST et al.

(64 P. (2d) 534)

In Banc.

*Paul C. King* and *Elmer Johnson,* both of Portland, for appellant.

*Robin D. Day,* of Salem, for respondent Henry Tautfest.

*Roy F. Shields,* of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondent Pacific Hop Growers.

BELT, J. The plaintiff corporation, engaged in the business of buying hops, commenced this suit to foreclose liens on two hop crops produced by the defendant Tautfest. The liens accrued by reason of advances made by plaintiff to the grower for the purpose of cultivating and harvesting the hops contracted to be delivered.

On June 13, 1932, the plaintiff and said defendant entered into a contract by the terms of which the defendant agreed to sell to the plaintiff 60,000 pounds of hops to be grown on certain described land, in each of the years from 1933 to 1937, inclusive. The contract stipulated the price to be paid for the hops each year and, among other things, provided that: "Said hops shall be prime quality, of even color, well and cleanly picked, free from damage by vermin, properly dried and cured, not broken and shall not be of the first year's planting."

On November 19, 1932, the same parties entered into a similar contract whereby the plaintiff. agreed to buy and the said defendant agreed to sell 25,000 pounds of hops during each of the above mentioned years, the same to be grown on land of the seller described in the contract.

The only crop year involved in this suit is 1935. During that year, under the first contract, the plaintiff advanced for cultivating and harvesting purposes, the sum of $4,500; under the second contract, the sum of $2,250. It is further conceded that, under the first contract, the defendant grower produced approximately 42,679 pounds of hops—17,321 pounds less than the amount specified in the contract. Under the second contract, the grower produced 24,188 pounds of hops, or 812 pounds less than the amount stated in the contract. After the hops were harvested the defendant, pursuant to agreement, stored them, on September 24, 1935, in a warehouse operated by the defendant Oregon Electric Company at Salem, Oregon, the warehouse receipts being issued in the name of the defendant Tautfest. Plaintiff concedes that defendant Tautfest delivered all the hops produced.

While the hops were in the warehouse, representatives of the plaintiff inspected them and took samples from various bales to determine their quality. These samples were later forwarded to the plaintiff at New York City. After a report from the plaintiff had been received relative to the samples sent to New York, Luckenbaugh, an executive officer of the plaintiff corporation, told the defendant Tautfest, on October 19, 1935, that the hops were not of contract quality and that they "would not accept them as contract hops". On November 22, 1935, the plaintiff, by letter, advised the defendant Tautfest that the hops were rejected for the

reason that they did not "meet the quality required by these contracts". No reference was made to the fact that the quantity of hops delivered was less than that specified in the contract. Thereafter, on November 30, 1935, the defendant grower, acting upon the theory that the hops had been wrongfully rejected, sold the same on the open market to the defendant Pacific Hop Growers for the best price obtainable: *Lake County Pine Lumber Co. v. Underwood Lbr. Co.*, 140 Or. 19 (12 P. (2d) 324) ; *Call v. Linn*, 112 Or. 1 (228 P. 127) ; *Wigan v. La Follet*, 84 Or. 488 (165 P. 579) ; *Daniels v. Morris*, 65 Or. 289 (130 P. 397, 132 P. 958) ; *Krebs Hop Co. v. Livesley*, 59 Or. 574 (114 P. 944, 118 P. 165, Ann. Cas. 1913C, 758). After deducting the expenses of the sales, the plaintiff was given credit for the money advanced for cultivating and harvesting purposes; the damages sustained by defendant Tautfest being the difference between the market price and the contract price. The defendant grower realized from the sale of the hops $119.15 more than was due him from plaintiff under both contracts, after expenses of sales had been paid, and such sum was tendered into court for plaintiff.

■ The decisive question in the case is whether plaintiff was justified in rejecting the hops. It is well settled in this jurisdiction that if the rejection was wrongful the grower, being ready, able, and willing to perform, would be entitled to retain the money advanced and credit the same on the damages sustained: *Livesley v. Strauss*, 104 Or. 356 (206 P. 850, 207 P. 1095) ; *Lachmund v. Lope Sing*, 54 Or. 106 (102 P. 598).

Plaintiff bases his right to reject the hops upon the ground that the quantity and quality of the same did not comply with the contracts. It is noted, however, that, in the formal letter of rejection, the objection to the hops was based solely upon quality.

■ Regardless of what may be the rule in other jurisdictions, it was incumbent upon the plaintiff, under the statute of this state, to specify its objections to the hops at the time delivery was tendered. Section 9-1403, Oregon Code 1930, provides:

"The person to whom a tender is made shall at the time specify any objection he may have to the money, instrument, or property, *or he must be deemed to have waived it*; and if the objection be to the amount of money, the terms of the instrument or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards." [Italics ours.]

Having objected solely to the quality of the hops at time delivery was tendered, it will not do for the buyer at this time to mend his hold and undertake to justify rejection of the hops on the ground that the grower failed to produce the amount specified in the contract.

■ Assuming, but not deciding, that plaintiff is correct in asserting that there has been no waiver of the objection as to quantity, we think there is no merit in the contention that the grower breached the contract in that respect. The hops for the various years were to be produced upon land particularly described in the contracts. The amount of the hops which would actually be produced could not be foretold with any degree of accuracy. Hence the parties estimated the quantity of production and the maximum amount which the plaintiff agreed to buy. Under a contract for the sale of a crop of a specified quantity to be grown during a given year on a particular tract of land, such designation of quantity is construed as a maximum amount only; and, if the seller, through no fault on his part, produces less than the designated quantity on the land described, he is not guilty of a breach of the contract and the buyer

is not, by reason thereof, excused from taking the quantity actually produced: *Wigan v. La Follett*, supra; *Davis & Co. v. Bishop,* 139 Ark. 273 (213 S. W. 744); *Rice & Co. v. Weber,* 48 Ill. App. 573; *Ontario Deciduous Fruit Growers' Association v. Cutting Fruit P. Co.,* 134 Cal. 21 (66 P. 28, 53 L. R. A. 681, 68 Am. St. Rep. 231); *Snipes Mt. Co. v. Benz Bros. & Co.,* 162 Wash. 334 (298 P. 714, 74 A. L. R. 1287). As stated in a note in 12 A. L. R. 1288 and quoted with approval in the case last cited: "The rule appears to be that, if the parties contemplate a sale of the crop, or of a certain part of the crop, of a particular tract of land, and by reason of a drought or other fortuitous event, without the fault of the promisor, the crop of that land fails or is destroyed, nonperformance is to that extent excused; the contract, in the absence of an express provision controlling the matter, being considered as subject to an implied condition in this regard; *   *   *.''

The evidence shows good faith on the part of the grower and the exercise of good husbandry in an effort to produce the maximum amount of hops contracted to be sold. The buyer was in no position to reject the hops by reason of the quantity. As a matter of fact, we think plaintiff never decided to do so. The contention now made relative to failure of quantity appears to have been an after-thought.

It is argued that the seller did not make a sufficient tender of the hops, but we see little merit in such contention. While the hops were in the warehouse, Tautfest called the office of the plaintiff corporation at Salem, Oregon, during the last of September, or the first part of October, and advised the agents of the plaintiff that "they can go ahead with those hops if they want to; they are theirs". With the contract price at 15 cents per pound and the market price 8 or 9 cents per pound, can it reasonably be said that the grower

was not desirous of delivering the hops produced? The more pertinent inquiry is: Did the buyer really desire to accept the hops? Or was it seeking an excuse to avoid its contract? When the rejection was made, it would have been a vain and idle thing for the seller to have made further tender of the hops: *Crosland v. Sloan*, 123 Or. 243 (261 P. 701); *Wigan v. La Follett*, supra; *Krebs Hop Co. v. Livesley*, supra. He was not obliged to turn over his warehouse receipts before receiving payment: *Livesley v. Strauss*, supra.

■ The reason plaintiff really asserts for the rejection of the hops is that they do not conform to the quality specified in the contracts. This question presented an issue of fact. It would require many pages of the reports to set forth the testimony of the various hop experts relative to this phase of the case. The record discloses that judging the quality of hops is not an exact science. Some of the experts on behalf of plaintiff testified that a certain sample of hops was of "prime quality" whereas on the following day the same expert declared the identical sample "not prime". Many experienced growers of hops testified, in effect, that the hops met the standard of quality provided in the contracts. The trial judge, who saw and heard the witnesses testify, found with the grower on the question of quality. After an examination of the record, we have no hesitancy in concurring in such findings.

The decree of the lower court, dismissing the suit of the plaintiff to foreclose its liens, is affirmed. Defendants are entitled to costs and disbursements.

KELLY, J., not sitting.