Argued January 4, reversed and remanded for new trial
June 14, 1967

# FINCHUM, *Respondent, v.* LYONS, *Defendant,* FIOROVICH, *Appellant.*

428 P. 2d 890

*Robert D. Puckett,* Klamath Falls, argued the cause for appellant. On the briefs were Proctor, Puckett & Crane, Klamath Falls.

*J. Anthony Giacomini,* Klamath Falls, argued the cause for respondent. With him on the brief was Stanley C. Jones, Jr., Klamath Falls.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and REDDING, Justices.

McALLISTER, J.

This is an action to recover the price of seed potatoes grown by plaintiff Finchum for defendant Fiorovich. The defendant Lyons was granted a nonsuit, and the jury found against Fiorovich, who will be referred to herein as the sole defendant. Fiorovich appeals and complains of the instructions to the jury and the rejection of three exhibits offered by him.

The plaintiff is a Klamath county farmer, and the defendant is a potato dealer at Watsonville, California. In April, 1961, the parties agreed in writing that the defendant would furnish plaintiff 700 sacks of Kennebec seed potatoes, that plaintiff would plant the seed and grow a crop of potatoes therefrom, and that defendant would buy for $2.50 per sack all of the crop that qualified as "Oregon Foundation Blue Tag Grade A seed." Defendant agreed to furnish at cost the sacks in which the potatoes were to be delivered. As to delivery, the contract provided as follows:

"The time of delivery to be agreed upon by both parties, tentative 50% in January, 1962 and 50% in February 1962."

Defendant furnished the seed, plaintiff grew the crop, harvested the potatoes, and stored them in his cellar. The potatoes were tested and found to comply with the contract at the time of the tests.

Plaintiff testified that beginning early in January, 1962, he continually urged defendant to furnish the sacks and to take delivery of the potatoes, but was put off by defendant. The sacks were finally furnished about March 10, and within a few days plaintiff began to load the potatoes into cars for shipment to defendant. Five carloads containing 2100 sacks were shipped to defendant in California. At defendant's request

shipping was discontinued and the remaining 2832 sacks were placed in cold storage in Klamath Falls.

Defendant sold the five carloads of potatoes to one of his customers in California, who reported to defendant that the potatoes were infected with bacterial ring rot. Ring rot is highly infectious and renders potatoes wholly unfit for seed. Defendant then rejected plaintiff's potatoes and refused to pay for them. Plaintiff brought this action to recover the contract price of his potatoes, and defendant counter-claimed for the cost of his seed, sacks, and other advances under the contract.

There was considerable testimony concerning soft rot decay in plaintiff's potatoes at the time they were sorted, sacked and delivered to defendant. However, the potatoes shipped to defendant and placed in storage for him at Klamath Falls all passed the normal shipping point inspection as Grade A seed, and the soft rot was a secondary issue, if it was an issue in the case at all. The crucial issue at trial was whether the potatoes were infected with ring rot. Plaintiff denied that they were so infected, and also contended that, in any event, the potatoes, at the time fixed by the contract for delivery, met the contract specifications as to quality and that any subsequent deterioration was the fault of defendant. With this background, we turn to the assignments of error.

■ Defendant assigned as error the refusal of the court to admit into evidence as defendant's Exhibit C a carbon copy of a letter dated April 18, 1962, addressed to the Klamath County Extension Agent by Jack L. Waud, Certification Specialist of Oregon State University. The defendant Don Lyons, who was the agent of the defendant Fiorovich, testified that he

received the copy of the letter in the mail. The letter read as follows:

"Mr. Walt Jendrzejewski
County Extension Agent
Klamath, Falls, Ore.

"Dear Walt:

"Powelson confirmed the diagnosis of ring rot in the samples sent from Finchum's Kennebecs.

"He did point out that there was considerable secondary rot present.

Sincerely,
[signed] Jack
Jack L. Waud
Certification Specialist"

There was evidence that the Powelson referred to in the letter was the Plant Pathologist in the Plant Disease Clinic at Oregon State Unnversity. If any of the potatoes involved in this lawsuit were tested by Dr. Powelson, the record of such test may have been admissible. No such record was offered. There was no proof that the letter quoted above, or a copy thereof, or any record of the letter, is in the files of Oregon State University or any other public agency. The letter was pure hearsay, was not admissible under any exception to the hearsay rule, and was properly rejected. *Miller Const. Co. v. D. M. Drake Co.,* 221 Or 249, 262–266, 351 P2d 41 (1960); *Allan v. Oceanside Lumber Co.,* 214 Or 27, 46, 328 P2d 327 (1958); *In re Braun's Estate,* 161 Or 503, 510, 90 P2d 484 (1939); *Patterson v. Horsefly Irrigation Dist.,* 157 Or 1, 25, 69 P2d 282, 70 P2d 36 (1937).

Defendant also contends that the court erred in withdrawing from evidence defendant's Exhibits D

and E, both copies of a report of the Bureau of Plant Pathology of the California Department of Agriculture concerning plaintiff's potatoes. The five carloads of potatoes shipped by plaintiff to defendant were sold by defendant to John Butler, a potato grower of Gonzales, California. Butler testified that when he started to cut plaintiff's potatoes in preparation for planting, he discovered that they were infected with bacterial ring rot, and that he immediately notified Fiorovich.

Butler further testified that the following morning he took samples of the potatoes to the Bureau of Plant Pathology at Sacramento, and delivered them to a pathologist named Sam Gotan and another pathologist named Dan Rosenberg. Butler testified that the samples he gave to the pathologists were Finchum's potatoes; that in Butler's presence the pathologists tested the potatoes, using the Gram's Stain Test; and that the pathologists then gave Butler a carbon copy (defendant's Exhibit D) of a report signed by both pathologists, dated April 12, 1962, and bearing State Lab. No. 454-62. The report is in two parts, the first, entitled "Specimen for Disease Determination", describes the host as Kennebec potatoes owned by John Butler, of Gonzales, and the second part, entitled "Diagnosis", reads "Bacterial Ring Rot." This copy of the report was admitted into evidence after it had been identified by Butler.

Defendant's Exhibit E was a copy of the pathological report, certified by George E. Altstatt, the Chief of the Bureau of Plant Pathology of California, to be a true, correct and complete copy of the original report dated April 12, 1962, on Specimen for Disease Determination, State Lab. No. 454-62, on file with his office. The exhibit included the certificate of the Sec-

retary of State of California that George Altstatt is the Chief of the Bureau of Plant Pathology of the California Department of Agriculture. The report on Specimen for Disease Determination certified by the Chief of the Bureau of Plant Pathology is identical with the copy of the report given to the witness Butler by the pathologists, Gotan and Rosenberg. Defendant's Exhibit E was also admitted in evidence.

At the close of the case plaintiff moved the court to withdraw and exclude from evidence both defendant's Exhibits D and E. The motion was made and allowed in chambers and the grounds assigned for the motion and its allowance by the court are not disclosed by the record.

■ We think the court erred in excluding these exhibits from evidence. It is undisputed that the five carloads of Finchum's potatoes were received by Butler. The testimony of Butler that he took some of Finchum's potatoes to the Bureau of Plant Pathology at Sacramento, that the pathologists, in his presence, tested the potatoes and immediately gave him a carbon copy of their report, which is identical with the report attached to defendant's Exhibit E, is sufficient to prove that defendant's Exhibit E is a report concerning plaintiff's potatoes. Defendant's Exhibit D was admissible for that limited purpose. *State v. Poole,* 161 Or 481, 486, 90 P2d 472, (1939); *State v. Locke,* 77 Or 492, 497, 151 P 717 (1915). Plaintiff in his brief in this court does not challenge the sufficiency of the evidence to establish that the potatoes described in defendant's Exhibit E are some of the plaintiff's potatoes involved in this lawsuit.

■ After the potatoes described in defendant's Exhibit E were identified as plaintiff's potatoes, defend-

ant's Exhibit E became admissible, having been proved as required by ORS 43.330(7).①

■ There is a well settled common law exception to the hearsay rule pertaining to what Wigmore calls "Official Statements" and what are also referred to as public or official records and documents. The general rule is stated in 32 CJS, Evidence § 637, pp 809-810, as follows:

> "Subject to the general rules of evidence, a record or document kept or prepared by a person whose public duty it is to record truly the facts stated therein is, when relevant, admissible as evidence of such facts, although the statements therein were made extrajudicially by a person not under oath and not subject to cross-examination.

> "This exception to the hearsay rule is based on the reliability, trustworthiness, and authenticity which usually attend public records and reports made and kept in the performance of official functions. It is predicated on the assumption that public officials perform their duties and are without motive to falsify, and that public inspection, to which such records are subject, will disclose inaccuracies. The purpose of the rule is to dispense with the appearance in court of public officials to prove routine matters."

Other statements of the same rule are found in 5 Wigmore, Evidence (3d ed) §§ 1630–1633; McCormick, Evidence 614, § 291; 20 Am Jur, Evidence 861, § 1023.

The common law rule as applied to entries made

---

① ORS 43.330. "Other official documents may be proved as follows: * * * * *

"(7) Documents of any other class in a sister state, the District of Columbia or territory of the United States, by the original or by a copy certified by the legal keeper, together with the certificate of the Secretary of State, judge of a court of record or mayor of a city of the state, that the copy is certified by the officer having the legal custody of the original. * * * * *"

by public officers of this state and of the United States is codified in ORS 43.370. The law relating to entries made by public officers of sister states has not been codified, but the method of proving the official documents of a sister state is prescribed in ORS 43.330(7). See *State v. Poole,* supra, and *State v. Locke,* supra.

Plaintiff does not challenge the general rule, but argues only that the pathologists' report in this case does not contain facts, but "conclusions involving the exercise of discretion or opinion," citing 32 CJS, Evidence 812-813, § 637, where it is said: "In so far as documents set forth the mere opinions or conclusions of public officials, they are inadmissible as official records or documents, at least where the official would not be competent to testify as to such opinion or conclusion, or where the opinion or conclusion is of doubtful reliability in the absence of the right of cross-examination." Although there are divergent views, many authorities hold that reports of investigations and inquiries, and the conclusions drawn by the public officials making such investigations, are not admissible. *Olender v. United States,* 210 F2d 795, 801, 42 ALR2d 736 (9th Cir 1954) ; *Gilbert v. Gulf Oil Corporation,* 175 F2d 705, 710 (4th Cir 1949) ; McCormick, Evidence 616, § 294; 20 Am Jur, Evidence 866, § 1027.

■ In our opinion the finding of the pathologists that plaintiff's potatoes were infected with bacterial ring rot is a finding of fact. Bacterial ring rot is a well known disease of potatoes, the symptoms of which were described in detail by witnesses for plaintiff and for defendant. The testimony disclosed that, except in its early stages, the disease is readily identifiable by those with expertise in the growing and handling of potatoes. All of the witnesses agreed that the standard chemical test for identifying bacterial ring rot is the

Gram's Stain Test, which according to the evidence is a simple test that can be made in less than ten minutes. There is nothing in the evidence to suggest that the test of plaintiff's potatoes involved any exercise of discretion or judgment. The examination of plaintiff's potatoes was made by the California Bureau of Plant Pathology pursuant to a duty imposed by statute,[9] and it seems clear to us that the pathologists who made the examination would be competent to testify concerning their findings. *Commonwealth v. Slavski,* 245 Mass 405, 140 NE 465, 29 ALR 281 (1923); *E. K. Hardison Seed Co. v. Jones,* 149 F2d 252 (6th Cir 1945).

■ We conclude that the court erred in withdrawing from evidence and excluding from consideration by the jury defendant's Exhibits D and E. Since this evidence pertained to the crucial issue in the case, we think the error was prejudicial and requires reversal.

■■ Since the case must be remanded for a new trial, we call attention to the rule that when the meaning of a written instrument is uncertain or ambiguous, the question of its meaning should be left to the jury under proper instructions. We agree with the trial court that the quoted provision of the contract concerning delivery is ambiguous, but we think its meaning should have been submitted to the jury under proper instructions. *Libby Creek Logging, Inc. v. Johnson,* 225 Or 336, 339, 358 P2d 491 (1960); *H. R. Wyllie China Co. v. Vinton,* 97 Or 350, 363, 192 P 400 (1920); *Longfellow v. Huffman,* 55 Or 481, 486, 104

---

[9] Cal. Agri. Code § 751 (West's 1954). "The director may investigate and certify to shippers or other financially interested parties the analysis, classification, grade, quality or condition of fruit, vegetable or other agricultural products, either raw or processed, under such rules and regulations as he may prescribe, including the payment of reasonable fees. * * * * *"

P 961 (1910) ; 3 Williston, Contracts (rev ed 1936) 1772, § 616; 53 Am Jur, Trial 228, § 269; 88 CJS, Trial § 217, pp 499, 500; Annotation, 65 ALR 648 (1930). The court, at the request of plantiff, construed the contract in language taken almost verbatim from *Krebs Hop Co. v. Livesley,* 55 Or 227, 234, 104 P 3 (1909). The instruction may have been appropriate in that case, but it was not applicable to the case at bar.

Reversed and remanded for a new trial.