Argued October 8, 1969, affirmed February 27, 1970

FINCHUM, *Respondent, v.* LYONS, *Defendant,*
FIOROVICH, *Appellant.*

465 P. 2d 708

*Robert D. Puckett,* Klamath Falls, argued the cause for appellant. On the brief were Proctor & Puckett and David R. Vandenberg.

*J. Anthony Giacomini,* Klamath Falls, argued the cause for respondent. With him on the brief was Stanley C. Jones.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,* DENECKE and HOLMAN, Justices.

McALLISTER, J.

This is the second time this action by plaintiff Finchum to recover for seed potatoes grown for the defendant Fiorovich has been here on appeal. On the first appeal we reversed a judgment for plaintiff and remanded the case for a new trial, *Finchum v. Lyons,* 247 Or 255, 428 P2d 890 (1967). The second trial also resulted in a judgment for plaintiff and defendant Fiorovich again appeals.

The case is governed by the provisions of the Uniform Sales Act, which has since been repealed. Although there are several assignments of error only two of them are worthy of extended consideration.

Plaintiff grows potatoes in Klamath County and defendant is a California potato dealer. In April 1961 the parties agreed that plaintiff would grow a crop of potatoes from seed furnished by defendant and that defendant would buy for $2.50 per sack all of the crop that qualified as "Oregon Foundation Blue Tag Grade A Seed." Defendant furnished the seed; plaintiff har-

---

* Goodwin, J., resigned December 19, 1969.

vested the crop in the fall of 1961 and stored it in his cellar.

In March 1962 plaintiff began shipping the potatoes to defendant in California. After five carloads' had been shipped defendant instructed plaintiff to place the remainder of the potatoes in cold storage in Klamath Falls. In April defendant notified plaintiff that his potatoes did not comply with the contract and were being rejected.

Plaintiff contended that his potatoes did comply with the contract and brought this action. Defendant counterclaimed for damages for breach of warranty. As at the first trial the crucial question was whether plaintiff's potatoes were infected with bacterial ring rot, which admittedly would have rendered them unfit for seed and justified defendant in rejecting the entire crop.

Defendant contends that the court erred in refusing to admit into evidence as Exhibit C a copy of a letter from the files of the Seed Certification Specialist at Oregon State University reading as follows:

"Mr. Walt Jendrzejewski
County Extension Agent
Klamath Falls, Ore.

Dear Walt:

Powelson confirmed the diagnosis of ring rot in the samples sent from Finchum's Kennebecs.

He did point out that there was considerable secondary rot present.

Sincerely,
[signed]   Jack
Jack L. Waud
Certification Specialist"

In the prior appeal we held that Exhibit C was properly excluded from evidence because there "was no proof that the letter quoted above, or a copy thereof, or any record of the letter, is in the files of Oregon State University or any other public agency." 247 Or at 259.

In this case William Sieveking testified that he was Jack L. Waud's successor as Seed Certification Specialist at Oregon State University and he identified Exhibit C as a copy of a letter taken from the files of his department. Since the letter was thus identified as an official record we must decide whether it should have been admitted in the second trial.

The official records exception to the hearsay rule is codified in ORS 43.370 and, as amended in 1967, reads as follows:

> "Entries in public or other official records, including books, data processing devices and computers, made by a public officer of this state or the United States in the performance of his duty or by another person in the performance of a duty specially enjoined by the law of either, are primary evidence of the facts stated."

In considering the foregoing statute in *Allan v. Oceanside Lumber Co.*, 214 Or 27, 49, 328 P2d 327 (1958), we said:

> "Under the exception to the hearsay rule just quoted, it is usually required that the officer either have personal knowledge of the facts of which he is under the duty to make a record or that he have the duty of ascertaining the truth of that which he does not know of his personal knowledge. Wigmore on Evidence, 3d Ed, § 1635, p 531.  *  *  *"

■ Viewed in this light the letter quoted above was only a hearsay reference to a test presumably made

of plaintiff's potatoes by a person identified only as Powelson. The author of the letter does not purport to have personal knowledge of facts which he was under a duty to record and there was no evidence that he had any duty to ascertain the truth or accuracy of any tests made by anyone else. On the contrary the evidence disclosed that Powelson was employed as a plant pathologist for the Extension Service of the Oregon State University School of Agriculture. There was no evidence that Mr. Wand as Seed Certification Specialist had any duty to ascertain the truth or accuracy of any tests made by Powelson.

Although it is not material to our disposition of this assignment of error the Powelson referred to in the letter was a witness at the trial. He testified that he had examined his records for the period in question, that he had no record of a test of Finchum's potatoes, and that he did not recall making such a test.

The defendant also assigns as error the denial of his motion to eliminate from consideration by the jury as part of plaintiff's recovery some 1,269 sacks of potatoes because they were never delivered or tendered to defendant, but remained in plaintiff's cellar until they were hauled to the dump or disposed of as cow feed. Defendant contended that his liability was dependent on delivery as required by the contract, while plaintiff contends that delivery or tender of the last 1,269 sacks would have been an idle gesture.

Defendant testified that on or about April 17, 1962, he personally told plaintiff that he was rejecting all of plaintiff's potatoes because they did not comply with the contract. In his counterclaim filed in this case defendant alleged that plaintiff began to deliver potatoes, that the potatoes did not meet the requirements of the contract and that "Defendant promptly

notified Plaintiff that Defendant would not purchase said defective potatoes and was returning said potatoes to the account of Plaintiff."

In *Crosland v. Sloan,* 123 Or 243, 248, 261 P 701 (1927), this court stated the applicable rule as follows:

"Of course, if the buyers repudiated the contract at La Grande and stated that they would not receive the sheep, there would be no further obligation on the part of the seller to offer delivery. The law does not require the doing of a vain or idle thing: Wigan v. La Follett, 84 Or. 488 (165 Pac. 579). * * *"

See, also, *Seidenberg v. Tautfest,* 155 Or 420, 426, 64 P2d 534 (1937). For similar holdings prior to the adoption of the Uniform Sales Act see *Wigan v. La Follett,* 84 Or 488, 165 P 579 (1917); *Livesley v. Krebs Hop Company,* 57 Or 352, 97 P 718, 107 P 460, 112 P 1 (1910).

In this case the jury could have found that defendant rejected plaintiff's potatoes *in toto* and that any attempt to deliver or tender additional potatoes would have been an idle gesture. There is no merit in this assignment of error.

We have carefully considered the other assignments of error and find no merit in them. The judgment is affirmed.