Argued May 7, reversed and remanded June 10, 1971

# WYNN, *Appellant, v.* SUNDQUIST, *Respondent.*

485 P2d 1085

126

In Banc

Edwin E. Allen, Judge.

*Don G. Swink,* Portland, argued the cause for appellant. With him on the briefs were Bailey, Swink, Haas and Malm, Portland.

*Richard Bryson,* Eugene, argued the cause for respondent. With him on the briefs were Windsor Calkins, and Bryson & Robert, Eugene.

TONGUE, J.

This is an appeal by plaintiff from a verdict and judgment for defendant in an action for wrongful death resulting from alleged malpractice by defendant, a doctor.

Plaintiff's complaint alleged that decedent's husband requested defendant to examine and treat decedent for illness because of extreme nausea and vomiting; that defendant refused to come to decedent's house, but instructed decedent's husband to bring her to the parking lot behind his office, where defendant did not examine her personally, but had his nurse administer drugs by injection; that decedent then became more seriously ill and that her husband so informed defendant, who took no action, but told her husband to wait three or four hours; that two hours later, without direction by defendant, decedent's husband took her to a hospital, where she died of acute fulminating diabetes mellitus with acidosis.

Following the jury verdict that defendant was "not guilty," plaintiff moved for a judgment n.o.v. and also, in the alternative, for a new trial, based, among other things, upon alleged error in the admission of a "report of investigation of injury to child" by Dr. Keith McMilan, as a medical investigator for the Oregon State Board of Health. That report involved the six-

year-old-child of the decedent and included the following statements under the following headings:

"Apparent circumstances of injury:
"Mrs. Gillis called to say a friend of hers, a teacher at Mt. Vernon Kindergarten, reported that in late May the child, Tony Wynn, came to school with bandaged hand. Teacher asked what was the matter. He told her he had been naughty and mommy burned his hand with iron.

"* * * * * *

"Summary of investigation of injury:
"Teacher is not available at this time for questioning. Mrs. Gillis thinks there have been other injuries to child. Local doctors are being alerted to watch for this child.

"Disposition of case: For record only at this time."

The motion for new trial was also based upon the following additional alleged error:

"In failing to grant a mistrial on the Motion of the Plaintiff, when the Court knew that juror No. 3, James A. Nell, had personal knowledge of the incident referred to in Exhibit No. 1 of the Defendant. Said juror stated under oath he would probably be influenced by that knowledge, all of which would be to the Plaintiff's detriment."

Upon denial of the motion and entry of judgment for defendant, plaintiff filed a notice of appeal, accompanied by a "designation of record" which did not designate "all the testimony and all the instructions given and requested," as permitted by ORS 19.074 (2) (c), but designated only portions of the record, as also permitted by that statute. The designated portions included "all the testimony, exhibits and evidence offered or received at the trial pertaining to the witness, Dr. Keith McMilan as a witness for the defense." The

designation also included, among other things, instructions and exceptions pertaining to that testimony and also the interrogation and colloquy between the court, counsel and one of the jurors. Plaintiff did not, however, file a "statement of points on which he intends to rely," as required by ORS 19.074 (2)(b) to be filed except where all of the testimony and instructions are included in the designation of record.

Defendant made no objection at that time to this defect in the appeal. Plaintiff, as appellant, then filed an abstract and brief, in which the same two alleged errors were assigned (admission of the report and failure to grant a mistrial). In that brief plaintiff contended, among other things, that the report was not admissible either under ORS 43.370, relating to "Entries in Official Records," or under ORS 41.680-41.710, the "Uniform Business Records as Evidence Act," and cited cases to support that contention. Plaintiff also contended that the trial court erred in refusing to grant a mistrial for admitted prejudice by one of the jurors.

Defendant then filed a respondent's brief which made no attempt to answer appellant's brief on the merits of those assignments of error, but contended that the judgment of the trial court must be affirmed because appellant failed to file a statement of the points on which he intended to rely. Plaintiff-appellant then filed a motion for an order allowing the assignments of error in his brief to stand as his statement of points and allowing additional time to defendant to designate further portions of the record and to file an answering brief on the merits. That motion was allowed by this court.

Defendant then designated additional portions of

the record, including, among other things, the remaining testimony of Dr. McMilan and plaintiff's Exhibit G. Defendant then filed a further brief in which he contends, with reference to the report in question: (1) that the record does not show that the report was admitted and plaintiff's assignment of error does not set forth the offer of the exhibit, the objection thereto and the court's ruling, as required by Rule 19 of this court; (2) that hearsay does not render official documents inadmissible and that the report was admissible under the "official records" exception to the hearsay rule; (3) that any error was invited by plaintiff's offering of Exhibit G as an official report prepared by the same doctor; and (4) that "plaintiff could not have been prejudiced by Exhibit 1," for the reason that it "only related or could relate to damages." Defendant also contended that there was no error in denying a mistrial for alleged prejudice by one of the jurors.

1. *The record shows that the "report of investigation" was received in evidence.*

With reference to defendant's first contention, we cannot overlook plaintiff's failure to comply with the clear requirements of both ORS 19.074 (2)(b), requiring the filing in this case of a statement of the points on which he intended to rely, and Rule 19 of this court (now Rule 2.35), requiring that an assignment of error for failure to sustain an objection to evidence "must set out *haec verba* the pertinent portions of the record," including (according to Appendix B under that rule) the question and the objection made, as well as the ruling of the trial court (although not specifically referred to in Appendix B). That rule goes on to provide that:

"* * * Assignments of error which the court can

consider only by searching the record for the proceedings complained of will not be considered."

1. On occasion, however, we have waived the strict compliance with the statutes and rules relating to appeals, except to the extent that they impose jurisdictional requirements. In our judgment, this is a proper case to do so. As stated, however, in *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 211, 358 P2d 1062, 368 P2d 737 (1962):

> "Having said this much, we hasten to add that this ruling is not to be taken as an invitation to attorneys to disregard the statute or to hold its mandatory provisions lightly. They are intended to be strictly followed and the court expects members of the profession to govern themselves accordingly. Unlike the former statutes prescribing appellate procedure, the provisions of the new code are simple; expressed with admirable clarity and are easily complied with. It is difficult to conceive of an adequate excuse for an attorney to misunderstand their meaning or to fail to follow their directions."

2. Because of the disregard of these statutes and rules by plaintiff's attorneys in this case and to insure more careful future compliance with these requirements, we deny costs on this appeal to plaintiff for the printing of appellant's brief. We also question whether, under these circumstances, plaintiff's attorneys can properly charge to their client the cost of printing a brief which does not comply with the rules of this court and for which costs have been denied, but do not pass upon that question at this time.

3. Upon examination of the record, however, we are satisfied that the report in question was received in evidence. Although plaintiff has not submitted to

us or called to our attention any ruling by the trial judge to that effect, it appears from the record that the trial judge overruled plaintiff's objection that the report was hearsay on the ground that the autopsy report offered by plaintiff was also "replete with hearsay." In addition, the exhibit is stamped as "Received" as defendant's Exhibit 1. Therefore, and since defendant does not deny that it was received in evidence, but contends only that plaintiff has not "set forth" the court's ruling to that effect, we are constrained to hold that this exhibit was received in evidence.

(2) *The "report of investigation" was not admissible as an "official record."*

4. Defendant contends that the "report of investigation" was admissible as an "official record" over objection that it was "not only hearsay one, but it's hearsay two." Thus, it is to be noted that the statements included in this report, as previously quoted, do not represent either facts of which the medical examiner had any firsthand knowledge or facts which represented findings as the result of any investigation made by him. On the contrary, these statements consisted of what Dr. McMilan had been told by another person (Mrs. Gillis), of what had been told to her by a second person (the teacher), of what had been told to her by a third person (the child)—thus constituting hearsay three times removed. Furthermore, these statements were included in the report "for record only at this time."

It has been suggested that a distinction should be recognized between official "records" and official "reports," with the result that a statute such as ORS 43.370, relating to the admission of "entries in public

or other official records," as an exception to the general rule excluding hearsay evidence, is limited to public "records," and does not extend to "reports" by public officers, as expressly provided for by the proposed Uniform Official Reports as Evidence Act. See Note, 30 Montana L Rev 227 (1969), and 5 Wigmore on Evidence (3d ed) 533-34, 699, §§ 1636, 1672.

Assuming, however, that not only public "records," but also "reports" by public officers made under duty imposed by statute, are admissible as an exception to the hearsay rule under either the Official Records Act (ORS 43.370) or the Business Records as Evidence Act (ORS 41.680), it is still required by the majority of courts that in order for a statement in such a report to be admissible, the person making the report must have had firsthand knowledge of the facts and the statement must be of such a nature that the person making the report, if called as a witness, could properly testify to the matters set forth in that statement. 5 Wigmore on Evidence (3d ed) 530-531, § 1635. See also McCormick on Evidence 617, § 294, and Dutton, The Official Records Exception to the Hearsay Rule in California, 6 Santa Clara Lawyer 1, at 6-7 (1965).

Decisions by this court under the Business Records as Evidence Act are in accord with that limitation. See *Miller v. Lillard,* 228 Or 202, 211, 364 P2d 766 (1961), and *Snyder v. Portland Traction Co.,* 182 Or 344, 351, 185 P2d 563 (1947). But in *Mayor v. Dowsett,* 240 Or 196, 400 P2d 234 (1964), this court held (at p 231) that relevant medical history of a patient in a hospital, furnished by a person other than the patient and recorded in the hospital records, may be

admissible under the Business Records as Evidence Act "in a proper case."

Decisions by this court under the Official Records Act, however, do not appear to decide this precise question. The only Oregon case cited by defendant on this point, *Finchum v. Lyons,* 247 Or 255, 263, 428 P2d 890 (1967), appears to be in accord with that view, however, since the apparent basis for holding that the pathologists' report was admissible in that case was not only that the record in question was an official record of another state, but also (at p 264) that "it seems clear to us that the pathologists who made the examination would be competent to testify concerning their findings." In a subsequent decision in that same case in 90 Adv Sh 457, 460, 255 Or 216, 465 P2d 708 (1970), (involving a letter from the files of a Seed Certification Specialist at Oregon State University) this court quoted with approval from *Allan v. Oceanside Lumber Co.,* 214 Or 27, 49, 328 P2d 327 (1958), (involving an Abstract of Clinical Record prepared by the United States Public Health Service) to the effect that in order to make an entry in a public record admissible under ORS 43.370 it is usually required that the officer making the entry *either* have had personal knowledge of the facts *or* that he had a duty of ascertaining the truth of such facts. In both *Allan* and *Finchum,* this court held that since there was neither proof of personal knowledge nor of a duty to ascertain the truth of the facts recorded, the documents involved in those cases were inadmissible.[1]

---

[1] In State v. McDonald, 55 Or 419, 103 P 512, 104 P 967, 106 P 444 (1909), however, involving an official "record," rather than an official "report" of an investigation, this court held (at p 447) that entries in an official "register" of births, marriages and deaths, are admissible without proof of firsthand knowledge of the person making such entries.

In this case it is clear that Dr. McMilan did not have "firsthand" knowledge of the facts of the "hearsay on hearsay" statement to him by Mrs. Gillis. In addition, it is clear that while Dr. McMilan may have had a duty to investigate reports of child abuse, he did not purport to make any investigation to ascertain the truth of that statement and did not make any findings to that effect. On the contrary, that statement was merely recorded by him, without investigation or verification, "for record only at this time."

Thus, under our previous decisions in *Allan* and *Finchum,* as applied to the facts of this case, it is clear that the "report" by Dr. McMilan should not have been received in evidence. See also *Fletcher v. Walters,* 246 Or 362, 365, 425 P2d 539 (1967), and Annot. 42 ALR2d 752, 753.

(3) *The "report of investigation" was not admissible under the rule of "invited error."*

5. As previously stated, the apparent basis upon which the trial judge overruled plaintiff's objection to the "report of investigation" relating to the burning of the hand of decedent's child was that plaintiff had previously offered, over objection by defendant, the report of the same state medical investigator relating to decedent's death and which, as stated by the trial judge, was "also replete with hearsay." On that basis, the trial judge ruled that "if the official records doctrine is appropriate in the instance of the autopsy report * * * it is also admissible in the case of the report by Dr. McMilan in regard to the claimed child abuse * * *."

Thus, defendant contends, without citation of authority, that "the error was certainly invited by

plaintiff offering and succeeding in getting admitted to evidence Exhibit G as an official record of Dr. McMilan containing hearsay."

Before discussing the authorities on this question, two distinctions must be noted: (1) Although the trial court admitted the autopsy report as an official record on authority of *Fletcher v. Walters, supra,* it was not objected to by defendant on the ground that it was hearsay and was not admissible under "official records" exception to the hearsay rule. Instead, it was objected to only upon the ground that the doctor had already "testified to what he reported" and that "it is the best evidence of it," and that the witness "is here to testify to the facts he has," with the result that the written report was a "self-serving statement." (2) The "report of investigation" relating to the alleged child-abuse incident was not offered in response to the previous offer by plaintiff of the autopsy report, but related to an entirely different subject matter as well as to an entirely different issue in the case.

6. The underlying basis for the rule of "invited error" is that where one party offers inadmissible evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible evidence, presumably upon the same fact, subject matter or issue. See 1 Wigmore on Evidence (3d ed) 304, 315; McCormick on Evidence 121, § 55, and 6 Jones on Evidence (2d ed). But see 31A CJS 517, Evidence § 190.

In *Walker v. St. Vincent de Paul,* 239 Or 135, 138-39, 396 P2d 898 (1964), this court stated that "* * * when testimony has once been received without objection it is within the discretion of the trial court to re-

ceive *similar testimony* subsequently offered although it is objected to when subsequently offered." In that case also, however, the subsequently offered testimony related to the same subject matter or issue. The same has been true in other decisions by this court.[9]

Different courts have adopted different rules relating to "invited error." See Wigmore, *supra,* 304-09, § 15. Also, according to Wigmore, at p 309, the trial court should be allowed considerable discretion in the application of such rules. But in most of the decisions in which otherwise inadmissible evidence has been received on the ground of "invited error," such evidence related to the same subject matter or issue as the previously, but improperly received evidence, so as to negative, explain or counterbalance the prior inadmissible evidence on that subject matter or issue. See cases cited Wigmore, *supra,* pp 306-08 in 1964 Pocket Supplement, pp 69-71. In this case, however, this is not true, for reasons previously stated. Indeed, it is difficult to understand why the admission of hearsay evidence on one subject matter or issue should open the door to the opposing party to offer hearsay evidence on any or all other subjects or issues.

In addition, as more recently stated in 1 Wigmore, 1964 Pocket Supplement 71, § 15:

> "Rules of curative admissibility are not inexorable commands binding upon the courts. Accordingly, if through inadvertence of counsel it

---

[9] See Oregon-Washington etc Co. v. Spokane etc R. Co., 83 Or 528, 541, 163 P 600, 163 P 989 (1917); Boyd v. Grove, 89 Or 80, 88, 173 P 310 (1918), and Green Mt. Log Co. v. C & N R.R.R., 146 Or 461, 470, 30 P2d 1047 (1934). Cf. Patterson v. Horsefly Irrigation Dist., 157 Or 1, 17, 69 P2d 282, 70 P2d 33 (1937), and Black v. Nelson, 246 Or 161, 165, 424 P2d 251 (1967).

becomes manifest that a miscarriage of justice would ensue from invoking the rule, the Court should have no hesitancy in granting a new trial."

This requires consideration of defendant's final contention—that the admission in evidence of the report relating to the alleged incident of child abuse by decedent was not prejudicial to plaintiff in this case.

4. *The "report of investigation" of the alleged incident of child abuse was prejudicial to plaintiff.*

7. Defendant contends that the admission of this report was not prejudicial because any relevancy of the report went to the issue of damages, rather than that of liability, and there was an unanimous verdict in favor of defendant, presumably on the issue of liability.

Nevertheless, it is our best judgment that the improper admission of evidence from which, if believed by the jury, it could properly find that decedent was a mother of such degraded character as to deliberately burn the hand of her child with an iron, was clearly and grossly prejudicial in the consideration by the jury of all issues in the case, including that of liability.

This is far different from cases cited by defendants holding that improper instructions on the issue of damages may not be prejudicial where the jury has returned a defendant's verdict, including *Foxton v. Woodmansee,* 236 Or 271, 289, 386 P2d 659, 388 P2d 275 (1964). Cases from other jurisdictions cited by defendant involving admission of improper evidence are also distinguishable on their facts and are not controlling.

For all of these reasons, we hold that the judgment for defendant must be reversed and that the case must be remanded for a new trial.[9]

Reversed and remanded.

---

[9] In view of the basis upon which this case has been decided, it is not necessary to consider plaintiff's further contention that the trial court erred in refusing to grant plaintiff's motion for a mistrial because of prejudice by one of the jurors.