Argued July 9, affirmed in part, reversed and remanded in part
November 12, 1976

# LAW, *Appellant,*
### *v.*
# KEMP et al, *Respondents.*

556 P2d 109

*Gary M. Bullock,* Portland, argued the cause and filed briefs for appellant.

*Frederic P. Roehr* of Vergeer, Samuels, Roehr & Sweek, Portland, argued the cause and filed a brief for respondent Bobby L. Kemp.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents Worth Lon Shoop and Hamman Stage Lines, Inc. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and Wayne A. Williamson.

Before Denecke, Chief Justice, and McAllister, Holman and Howell, Justices.

McALLISTER, J.

## McALLISTER, J.

This is a wrongful death action arising out of a fatal highway accident which took place on the evening of November 4, 1972 east of The Dalles. Defendants are Bobby L. Kemp, who was granted an involuntary nonsuit at the close of plaintiff's case, and Hamman Stage Lines and Hamman's driver, Worth Lon Shoop, for whom the jury returned a verdict. Plaintiff, the personal representative of Daniel Franklin Law, appeals from the resulting judgments for all defendants.

On the evening of the accident it was overcast and dark, but driving conditions were otherwise good. Daniel Law and a companion, who were returning to The Dalles from a hunting trip, were traveling westerly on Interstate Highway 80N in Law's pickup, pulling a horse trailer carrying two horses, when the pickup went out of control. Both the pickup and the trailer rolled over, the pickup coming to rest on its side in the right-hand westbound lane, and the trailer, also lying on its side, in the left-hand westbound lane. Shortly thereafter Law and his companion had left the pickup and were standing somewhere near the overturned horse trailer when they were struck and killed by Hamman's bus. Shoop, the bus driver, had seen the overturned pickup in the right lane and had turned into the left lane to avoid it. He did not see the obstructions in the left lane in time to avoid a collision. Plaintiff's theory at trial was that Law's loss of control over the pickup[1] was caused by Kemp's negligence in improperly entering the freeway from the Rufus on-ramp just ahead of the pickup, and that the collision which killed Law was caused by the negligence of Shoop, the bus driver.

Plaintiff assigns as error the trial court's granting

---

[1] The case was apparently tried, and has been argued, on the assumption that Law was driving the pickup at the time of the mishap. Although we find no evidence to indicate that Law rather than his companion was driving, we will adopt that assumption, as none of the parties has contested it.

of defendant Kemp's motion for involuntary nonsuit at the close of plaintiff's case. Although the question is a close one, we hold that plaintiff made out a prima facie case against Kemp, and that granting the nonsuit was error.

The complaint charged that Kemp was negligent in failing to yield the right of way when he entered the freeway.[2] Kemp testified that he was on the ramp approaching the freeway at a speed of 35 to 40 miles an hour when he observed headlights approaching in the right-hand lane some distance to the east. He believed that his vehicle and the one approaching on the freeway were on a collision course. Instead of slowing or stopping to let the vehicle on the freeway go by, Kemp "sped up to 65, 70 miles an hour, freeway speed, and entered the freeway." He was, he testified "pulling away" from the approaching vehicle at that time. He then noted that the lights behind him were "awfully bright," and that the vehicle behind him had begun to go faster. He became worried because it came up close behind him and, at first, did not appear to be changing lanes.

Kemp then saw that the pickup had pulled into the left lane and begun to pass him "rather fast." He testified that at this time he saw it swerving and that he also saw the trailer jackknifed behind the pickup. Becoming alarmed, he accelerated and pulled ahead of the pickup just before it rolled over.

Kemp was the only surviving witness to these events. The jury, however, was not required to believe his version of the accident. There is other evidence tending to cast doubt on portions of his testimony. Law's brother, who had driven the pickup while pulling the loaded horse trailer on other occasions,

---

[2] At the times relevant to this case, ORS 483.202(1) provided:

"The driver of a vehicle entering a freeway or other arterial highway where an acceleration or merging lane is provided for his use shall look out for and give right of way to vehicles on the freeway or other arterial highway."

These provisions are now found in ORS 487.260(1).

testified that the pickup's top speed, when pulling that load, was 60 or 65 miles an hour, and that it was possible to accelerate to that speed only very gradually from 50 miles an hour. There was also evidence that skid marks made by Law's pickup began in the right-hand lane about 150 feet beyond the west end of the on-ramp.

The jury might well have disbelieved Kemp's testimony that he entered the freeway at 65 to 70 miles an hour well ahead of the pickup and that the pickup then began to gain on him rapidly. It could have concluded, from the evidence about the pickup's top speed and the location of the skid marks, that Kemp either entered the freeway dangerously close in front of the pickup, or that his entry speed was substantially less than he testified. The jury could, therefore, have found that Kemp entered the freeway in a manner which made it necessary for the driver of the pickup to brake suddenly, causing it to go out of control.

Kemp argues that even if his version of the facts were not believed, there is no evidence of alternative facts to indicate that anything he did caused the pickup to go out of control. However, the jury could have inferred from the circumstances—including the good driving conditions, the lack of other traffic in the immediate vicinity, the conflict in the evidence about the pickup's speed, and the proximity of the skid marks to the point where Kemp entered the freeway— that an improper freeway entry by Kemp was more probably the cause of the mishap than was the negligence of Law or some other unknown cause.

In *Skeeters v. Skeeters*, 237 Or 204, 214, 389 P2d 313, 391 P2d 386 (1964) we noted that:

> "* * * while the jury cannot be permitted to speculate, the jurors can be allowed to draw reasonable inferences from the evidence submitted by the litigants. Certainly, a function of the jury is to apply the ordinary experience of mankind to the disputed facts and arrive at the conclusion their reasoning dictates. It is difficult to

[ 585 ]

define precisely the boundary line between conjecture and fact reasoning. But if the evidence makes a selection from the various possibilities and singles out in such a way as to display a causal relationship between the wrongful act of the defendants and the injury sustained by plaintiff, the conclusion is grounded in the proof and is not mere conjecture."

This case is even closer than *Skeeters* where, although there was no direct evidence of how the injury happened, the surrounding circumstances indicated a highly probable "selection from the various possibilities." As noted in *Skeeters,* the plaintiff has the burden "to remove the cause from the realm of speculation and give it a basis in the proferred facts; * * * " 237 Or at 215. Plaintiff also has the burden of convincing a jury that Kemp's negligence was, more probably than not, a proximate cause of the accident. Plaintiff need not convince the court of the probabilities, however. To survive a motion for involuntary nonsuit, plaintiff's evidence must merely be such as to permit a reasonable jury to reach that conclusion. The court, when passing upon the motion, must give the plaintiff the benefit of every reasonable inference which could be drawn from the evidence, when it is considered in the light most favorable to plaintiff. *Karoblis v. Liebert,* 263 Or 64, 67, 501 P2d 315 (1972); *Denny v. Alder,* 258 Or 295, 298, 482 P2d 723 (1971).

The jury in the present case could have reasoned from the evidence that Kemp's negligence was, more probably than not, the cause of the accident. The trial court, therefore, erred in granting the nonsuit and the case must be remanded for a new trial as to defendant Kemp.

■ Over plaintiff's objections, the trial court admitted evidence that a post-mortem blood alcohol test performed on Daniel Law showed that his blood alcohol content was 0.11%, and that the police officer who investigated the accident observed a number of beer bottles, both empty and full, in and around the

overturned pickup. Plaintiff assigns both of these rulings as error.

The results of the blood alcohol test were properly admitted. Defendants had alleged that Law was contributorily negligent in the operation of his vehicle. We have previously held that evidence of a driver's intoxication is admissible in support of such allegations. *Christianson v. Muller,* 193 Or 548, 552, 239 P2d 835 (1952), overruled on other grounds by *Beglau v. Albertus,* 272 Or 170, 180-181, 536 P2d 1251 (1975). At the time of the accident and the trial, ORS 483.642(1) provided:

> "At the trial of any civil or criminal action, suit or proceeding arising out of the acts committed by a person driving a motor vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's breath, blood, urine or saliva shall give rise to the following presumptions:
>
> \* \* \* \* \*
>
> "(c) Not less than .10 percent by weight of alcohol in his blood, supports a disputable presumption that he was then under the influence of intoxicating liquor."

This statute obviously contemplates that the results of blood alcohol tests are admissible in civil actions to show intoxication. Plaintiff relies on *Lynch v. Clark et al,* 183 Or 431, 194 P2d 416 (1948) in which it was held that evidence of blood alcohol content was not sufficient, standing alone, to create an issue of negligence for the jury. The opinion points out that when the issue is negligence, the question for the jury is conduct, not intoxication *per se.* The court also clearly pointed out, however, that where there is evidence of negligent *conduct,* independent evidence of intoxication may properly be considered by the jury:

> "\* \* \* If there was other evidence in the record tending to prove that the decedent was negligent and that such negligent conduct on his part proximately contributed to his own injury, then it is clear upon the authorities that the defendant would be entitled to show

[ 587 ]

by proper evidence that the decedent was intoxicated at the time and the jury would be entitled to consider the evidence of intoxication in connection with all of the other evidence of the case in determining whether or not the decedent was guilty of contributory negligence. * * *" 183 Or at 434-435.

In this case there was evidence from which the jury could have found that Law's pickup, while pulling a trailer loaded with two horses, accelerated rapidly and abruptly attempted to pass Kemp's car, which was then traveling at 65 to 70 miles per hour. There was, therefore, independent evidence of negligent conduct.

The trial court did not err in admitting evidence of Law's intoxication. What we have said here also disposes of plaintiff's contention that the police officer's testimony about the beer bottles in and round the pickup should have been excluded. *Compare Christianson v. Muller, supra,* 193 Or at 554, *with Walker v. Penner,* 190 Or 542, 550-551, 227 P2d 316 (1951).

Plaintiff also argues that the blood test report was hearsay and did not come within any exception to the hearsay rule.

Dr. Brady, the State Medical Examiner, testified that the test was performed, and the result recorded on the report form, by a technician in his office. ORS 43.370 provides:

> "Entries in public or other official records, . . . made by a public officer of this state . . . in the performance of his duty or by another person in the performance of a duty specially enjoined by the law . . ., are primary evidence of the facts stated."

At the time of this accident it was the statutory duty of the Oregon State Medical Examiner and his staff to investigate all accidental deaths and to prepare a report of the relevant findings.[3]

In *Wynn v. Sundquist,* 259 Or 125, 485 P2d 1085

---

[3] ORS 146.030(1)(c), repealed, Oregon Laws 1973, Ch. 408, § 35; ORS 146.560, repealed, Oregon Laws 1973, Ch. 408, § 35. Specific authority for post-mortem blood tests is now provided in ORS 146.113.

(1971), cited by plaintiff, the opinion suggests, but does not adopt, a distinction between official "records" which are admissible under ORS 43.370, and "reports" by public officers. Plaintiff urges that that distinction be recognized in this case. In *Wynn* the report, which was held inadmissible, contained unverified information, furnished by a member of the public, which was itself hearsay. We held that even if the report were within the terms of ORS 43.370, it was not admissible because:

> "* * * it is still required by the majority of courts that in order for a statement in such a report to be admissible, the person making the report must have had firsthand knowledge of the facts and the statement must be of such a nature that the person making the report, if called as a witness, could properly testify to the matters set forth in that statement. * * *" 259 Or at 133.

The "report" in the present case meets that test, and is admissible either under ORS 43.370, or under the common-law exception to the hearsay rule for "official written statements." See *Finchum v. Lyons,* 247 Or 255, 262-264, 428 P2d 890 (1967). The report itself was authenticated by the State Medical Examiner, it was prepared by a member of his staff, and it contains the report, as a fact, of the results of a recognized chemical test. The objection to its admission on hearsay grounds was properly overruled.

■ Plaintiff also assigns as error the trial court's refusal to withdraw from the jury the issue of contributory negligence and, further, objects to certain instructions given the jury. We have considered plaintiff's arguments and authorities, and find these assignments of error are not well taken.

The judgment for defendants Hamman Stage Lines and Worth Lon Shoop is affirmed. The judgment for defendant Bobby L. Kemp is reversed and the cause remanded for further proceedings.